# EXHIBIT A
# Part 1 of 2



Confidential

Washington Atlanta New York San Francisco Dubai London Milan Paris Singapore Sydney Tokyo Toronto

# Sanctions Compliance Transaction Review – Standard Chartered Bank

*Report on Iranian Trade Finance Transactions*

*March 11, 2011*

**CONFIDENTIAL**

## Table of Contents

| Section | Topic | Page |
|---|---|---|
| 1. | Approach | 3 |
| 2. | Summary of Results | 26 |
| 3. | Transactions Involving Non-EAR 99 U.S. Origin Goods | 28 |
| | a. Monarch Aviation | 32 |
| | b. Mac Aviation | 39 |
| | c. Jetpower Industrial | 46 |
| | d. Downtown Trading | 53 |
| | e. Blue Sky Group (Mahan Air) | 65 |
| | f. Other Transactions | 72 |
| 4. | Transactions That Involved U.S. Persons | 84 |
| | a. Monarch Aviation | 87 |
| | b. U.S. Shipping Agencies | 89 |
| | c. U.S. Vessels | 93 |
| 5. | Transactions Identified as Non U-Turn Payments | 97 |
| | a. Kesht Va | 98 |
| 6. | Transactions That Appeared to Follow U-Turn Routing | 101 |
| 7. | Transactions With No U.S. Nexus | 108 |
| 8. | Potentially Licensable or Exempt Transactions | 110 |
| | a. Agricultural – Tate & Lyle | 112 |
| | b. Medical – Aris Trading | 115 |

| Section | Topic | Page |
|---|---|---|
| 9. | Transactions Involving EAR 99 U.S. Origin Goods – Inconclusive Direct Export | 118 |
| | a. Diamonds Steel | 120 |
| | b. Mapna | 139 |
| | c. Bakelite General Trading | 151 |
| | d. Other Goods | 168 |
| 10. | Transactions With Some Evidence of U.S. Origin Goods | 190 |
| | a. Mixed Origin Goods | 193 |
| | b. Unconfirmed Certificate of Origin | 203 |
| | c. Blue Sky Group | 212 |
| | d. Unconfirmed Aviation Goods | 214 |
| 11. | Transactions Selected – Insufficient Evidence Available | 223 |
| 12. | Transactions Outside of the Review Period | 225 |
| | Appendices | 234 |
| Appendix 1 | Further Details on Approach | 236 |
| Appendix 2 | Transactions Post April 12, 2005 | 245 |
| Appendix 3 | Use of KYC and KYC Checklists in SCB, Dubai | 247 |
| Appendix 4 | Calculation of Estimated Total Populations | 249 |
| Appendix 5 | Country-Specific Findings for Tier 2 Countries | 256 |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 1. Approach

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

# 1. Approach - Scope of Review

- **This Report.** This Report ("Report") summarizes the results of a Review ("Review") by Promontory Financial Group, LLC ("Promontory") of Iranian Trade Finance Transactions involving Standard Chartered Bank ("SCB" or the "Bank"). The Report addresses Iranian business only. Subsequent reports will summarize Promontory's review of payments and trade transactions involving U.S. sanctioned countries other than Iran (i.e. Burma, Cuba, Iraq, Libya, North Korea, Sudan, and Syria).

- **Time period.** January 1, 2001 to December 31, 2007 (the "Review Period").

- **Terms used in this Report.** Capitalized terms used but not defined in this Report have the same meaning as those used in the report entitled "Sanctions Compliance Transaction Review – Standard Chartered Bank – Report on Iranian Payments" (the "Payments Report") previously submitted on January 21, 2011.

- **SCB locations.** SCB, with advice of external counsel and Promontory, determined in scope countries and the level of review to which they were to be subjected. Countries were assigned to one of three tiers or to "Other" as follows:

  - **Tier 1.** Evidence has been identified of a policy/practice of repair or cover payments specific to transactions involving U.S. sanctioned countries.

  - **Tier 2.** No evidence has been identified of a policy/practice of repair or cover payments specific to transactions involving U.S. sanctioned countries. During the Review Period, credit-related trade values with U.S. sanctioned countries exceeded $100 million or Wholesale Banking revenues involving U.S. sanctioned countries exceeded 2.5% of SCB's global Wholesale Banking (ex-U.S.) revenues with U.S. sanctioned countries.

  - **Tier 3.** No evidence has been identified of a policy/practice of repair or cover payments specific to transactions involving U.S. sanctioned countries. During the Review Period, credit-related trade values with U.S. sanctioned countries were between $5 million and $100 million and Wholesale Banking revenues involving U.S. sanctioned countries were 2.5% or less of SCB's global Wholesale Banking (ex-U.S.) revenues with U.S. sanctioned countries.

  - **Other.** No evidence has been identified of a policy/practice of repair or cover payments specific to transactions involving U.S. sanctioned countries. During the Review Period, credit-related trade values with U.S. sanctioned countries were less than $5 million and Wholesale Banking revenues involving U.S. sanctioned countries were 2.5% or less of SCB's global Wholesale Banking (ex-U.S.) revenues with U.S. sanctioned countries.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 1. Approach - Scope of Review (continued)

- **Trade Finance Transactions.** For the purposes of this Report, Trade Finance Transactions include all cross-border Trade Finance Transactions other than the import/export of goods paid for through the "open account" method (i.e. through a direct payment from buyer to seller, normally upon receipt of goods or following invoicing from the seller). Payments through the open account method are addressed as part of the Payments Review. Trade Finance Transactions include:
  - Import and Export Letters of Credit
  - Import and Export Documentary Collections
  - Discounting of Bills of Exchange
  - Guarantees.

  A "transaction" consists of both the initial activity associated with the establishment/set-up of the transaction, and all other recorded activity associated with that transaction, except as otherwise noted. For example, one Export Letter of Credit transaction could include the establishment of the Export Letter of Credit, a number of amendments and multiple negotiations associated with that Letter of Credit.

  This Report does not consider medium and long term trade transactions (e.g. those related to structured trade finance), which are addressed in the report entitled "Standard Chartered Bank, Dubai and London, Iranian Trade Finance Business, Part B: Medium/Long Term Trade Business, 2001 – 2007" previously submitted on January 21, 2011.

- **Currencies.** The Review included both USD denominated and non-USD denominated transactions. Non-USD transactions were reviewed as part of the hard copy review of selected transactions discussed on page 10 to determine whether they involved exportation, re-exportation or trans-shipment of U.S. origin goods to a sanctioned country.

- **Value of Transactions.** In this Report, except as otherwise noted, the term "value" refers to the aggregate invoice value of the transaction as seen in the electronic trade data or hard copy files reviewed, excluding any amount of an invoice value confirmed by Promontory as having been paid prior to January 1, 2001 or after December 31, 2007 and excluding any subsequent discounting or refinancing payments related to the same transaction. Where Promontory identified payments made prior to January 1, 2001, that related to transactions involving entities with transactions reported elsewhere in this Report, information regarding those transactions is provided in the section of this Report entitled "Transactions Outside of the Review Period".

©2011 Promontory Financial Group, LLC. All rights reserved.

5

**CONFIDENTIAL**

## 1. Approach - Tiering for Payments and Trade Transactions

- We presented our approach to the Payments and Trade Reviews for each tier of countries in our update in May, 2010. This is summarized below:

| Tier | Countries | Customers and counterparties | Payments | Trade |
|---|---|---|---|---|
| 1 | United Kingdom ("UK"), United Arab Emirates ("UAE"), United States ("U.S.") | Identify relationships (customer and non-customer) with entities of sanctioned countries and customers that are SDNs | Review of all cross-border USD SWIFT messages (all message types) against search terms | Review of all trade-related USD SWIFT messages<br><br>Review of other electronic trade system records for transactions involving banks or corporates of sanctioned countries<br><br>Manual review of a sample of SCB's hard-copy files related to identified transactions |
| 2 | Singapore, Hong Kong, India[1], Japan, Jersey[2] | Identify USD accounts of entities that are related to sanctioned countries and SDNs and individuals that are SDNs | Review of account statements and related SWIFT messages to identify USD payments by identified accounts | Review of electronic trade system records for transactions involving identified accounts and transactions involving sanctioned countries |
| 3 | Indonesia, Thailand, Korea, China, Malaysia, Pakistan, Bahrain[3] | Identify USD accounts of entities that are related to sanctioned countries and SDNs and individuals that are SDNs | | |

[1] As previously reported, due to local data and regulatory requirements, Promontory could not review customer information in India. This review has been undertaken by SCB, India personnel using Promontory's methodology. For local regulatory reasons, findings from this work have not been included in this report.

[2] Jersey included despite zero credit-related trade value, based on offshore private banking business and proximity to London.

[3] Bahrain included despite zero credit-related trade value, based on identified revenues and proximity to United Arab Emirates.

©2011 Promontory Financial Group, LLC. All rights reserved.

6

**CONFIDENTIAL**

# 1. Approach - Review of Tier 1 Electronic Data

**Tier 1: Electronic Data Review – All Available USD SWIFTS Filtered**

- All trade-related USD denominated SWIFT messages from the relevant SCB locations were filtered using Promontory's filtering methodology and criteria, as described in the Payments Report previously submitted. Any potential matches against Promontory's SDN list were escalated for further review. The search terms used included:
    - A list of SDNs designated at any time from January 1, 2001 to March 31, 2010.
    - Any Islamic Republic of Iran Shipping Lines ("IRISL") related entities or vessels designated between March 31, 2010 and June 30, 2010.
    - A list of bank identifier codes and bank names of sanctioned banks, banks in sanctioned countries, and the foreign affiliates of sanctioned banks.
    - A list of geographic identifiers (cities, towns, regions, and ports) of sanctioned countries.

- The filtering included all in scope USD denominated SWIFTs sent and received in the Review Period to and from SCB, London and SCB, Dubai, including:
    - All MT700 messages (relating to the establishment of a Letter of Credit).
    - All MT400 messages (relating to the establishment of a Guarantee).
    - Messages types MT701 to MT799 and MT401 to MT499 (being messages relating to the administration and amendment of Letters of Credit and Guarantees, respectively).

- Therefore, in conjunction with the results of the Payments Report previously submitted, all cross-border USD SWIFT messages within scope have been filtered against Promontory's filtering methodology. In addition, where payments-related SWIFT messages were identified in the Payments Review as being associated with a trade finance transaction, those SWIFTs were considered as part of the Trade Finance Review work stream and were not included in the Payment Review results.

**Tier 1: Electronic Data Review – Electronic Trade Data Filtered**

- All electronic trade data from the relevant SCB locations (e.g. from the electronic trade platforms Exim Bills and TC Exim in Dubai, and Tradewinds and TC Imex in London), for all currencies utilized during the Review Period, were also filtered using the same criteria and escalation procedures.

- The limitations of the data available are discussed on the following page.

**Results Of The Electronic Data Review**

- The results of the filtering were used to select transactions for hard copy review, for which the detailed approach is described below.

- Where a transaction was selected for further review, Promontory sought to identify and review all SWIFTs related to that transaction, including related payments messages such as MT202s and MT103s, and any other relevant electronic trade data.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

# 1. Approach - Review of Tier 1 Electronic Data (continued)

**Limitations Of Electronic Data Available**

- Promontory considered a number of sources of electronic data during its work:

    - SCB's Trade Approval System ("TAS") was reviewed at a high level at an early stage of the project for the purposes of determining the initial number of transactions to be selected for further review.[1] However, during the Review Period TAS was used primarily by the SCB Group Risk function to capture trade activity for risk management purposes, and was intended to capture only transactions of up to $1m in value. As a result it included duplicated trades recorded by different parties for early approval, held little transactional detail, and did not record many high value transactions. Our subsequent work suggests TAS understated the volume and value of trade business undertaken (see below).

    - SCB provided information from its core banking and other transaction processing systems upon request, for instance, when establishing the account history of an entity under review.

    - The trade finance systems used during the Review Period in SCB, Dubai and SCB, London were of limited functionality and scope, and many of the systems were decommissioned (either during the Review Period or subsequently) and had to be restored to enable access to the underlying data. Once restored, the data were extracted and rebuilt on Promontory servers in London and Dubai to enable analysis.

- The detail available within the Tier 1 electronic-trade data was limited. The data normally identified the key parties involved in the transaction, the timing and currency of the transaction, and associated amendments. The full payments routing of the transaction was sometimes available. However:

    - The data were not 'linked', i.e., each activity within a transaction was counted as a separate, independent line of data. For example, an Export Letter of Credit could have had one line of data for when it was advised, a later line for an amendment, and then three separate, unlinked, lines within the data set for individual negotiations.

    - There was no metadata available, no audit trails, and no recording of associated correspondence with a transaction.

    - The electronic data did not include scanned hard copy documents, and detailed shipping documentation was not available, which meant that information was limited when considering areas such as the origin of the goods, the shipping lines used, and the full range of related parties to a transaction.

- As a result of these limitations, greater focus was placed on the review of the available hard copy, and greater weight was given to hard copy evidence when assessing a transaction.

[1] See page 9 for further detail on how the number of total transactions in the Review Period was estimated.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 1. Approach - Review of Tier 1 Electronic Data (continued)

**Estimates of Total Transactions in the Review Period**

- As stated above, the trade finance systems in place during the Review Period had limited reporting functionality, and in all cases data had to be extracted on a "line by line" basis in order to enable analysis.
- As a result, there is no reliable single source of data for estimating the total trade finance transactions undertaken during the Review Period.
- Consideration was given to a number of sources of data:
    - TAS was used for early estimates, and records 9,981 Tier 1 credit-related trade finance transactions involving sanctioned countries during the Review Period, of which 9,816 were Iranian. As stated above, this is likely to be an underestimate.
    - The SWIFT data can provide a count of the MT700 and MT400 messages used to initiate Letters of Credit and Guarantees. However, Promontory's SWIFT database only holds USD transactions, and the scope of the Trade Review is all currencies. In addition, there is no country identifier code in a SWIFT message which would necessarily identify the location of all parties involved in a transaction (e.g., the domicile of the Importer and the Exporter). Given the context of the Review, these factors prevent the data supporting a meaningful estimate of the number of SWIFT trade finance messages with an Iranian nexus. The table below provides a count of the total number of MT700 and MT400 series messages that were filtered during our work (i.e., messages relating to all countries, whether sanctioned or unsanctioned).
    - The electronic trade data have country identifiers, and covers all currencies. However, as discussed above, the data were unstructured and unlinked. To estimate the number of transactions during the period, analysis was undertaken of the electronic trade data sets to automatically "link" lines of data using mentions of reference numbers in different fields available in the data sets. The results of this analysis are likely to be an overestimate, as our work indicates that 'links' are often only identified from hard copy review (i.e., a data line for a transaction has no reference data matching it to the "main" part of the transaction, but such a 'link' can be identified from the associated hard copy). As a result, the trade data estimate is likely to double count many transactions, by counting two or more data line sets as independent of one another, when they should be counted as part of the same deal.
- Further details on the estimated total number and aggregate value of transactions involving sanctioned countries is provided in Appendix 4.

| SWIFT Trade Messages Subject to Filtering in London & Dubai servers (all countries) | | |
| --- | --- | --- |
| | **Estimated Total Messages** | **Unique Tag 20 identifiers[1]** |
| MT400 | 76,979 | 69,500 |
| MT700 | 171,221 | 165,117 |
| MT401 to MT499 | 166,940 | 82,480 |
| MT701 to MT799 | 1,460,130 | 545,516 |

| Trade Transactions from Electronic Trade Systems Subject to Filtering (Iran only) | | |
| --- | --- | --- |
| | **Estimated Total Number** | **Estimated Total Value** |
| London | 1,205 | $8,034,070,556 |
| Dubai | 23,249 | $10,282,510,554 |

[1] Tag 20 is commonly used to hold a transaction reference number, e.g., for the trade finance transaction.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

# 1. Approach - Review of Tier 1 Hard Copy

**Tier 1: Hard Copy Review – Hard Copy Indexing**

- In both SCB, London and SCB, Dubai, initial hard copy file retrieval requests failed to produce a sufficient body of documentation to enable a review of the transactions in question. As stated above, the electronic trade data were often not sufficient to enable an assessment of the transaction, which meant that the hard copy files were necessary for a meaningful review to take place.
- It was therefore decided to manually re-index all available hard copy trade files for the Review Period.
- The re-indexing process was a substantial logistical exercise, and involved staff from Promontory, SCB, Crown (SCB's records manager in Dubai), Iron Mountain (SCB's records manager in London), and Ernst & Young. Over 100 people in Dubai were involved in total, and 47 people worked in the UK on this exercise. The exercise ran from June, 2010 to August, 2010.

**Tier 1: Hard Copy Review – Selected Hard Copy "Linked" and Reviewed**

- During the course of our Review, 2,438 transactions were selected for hard copy review, using the three separate selection criteria described below.
- Each transaction was then "linked" by an investigator, who used the available electronic data and the available hard copy records to rebuild the steps of the transaction into a full case for review. This was done by identifying a new transaction reference number mentioned in one hard copy file (e.g., for an amendment or a negotiation) and then retrieving the referenced file as part of the "case building" process. This was often an iterative process, as new hard copy records would provide more information on other linked files.
- Transactions continued to be "built" until no further transaction steps or records could be identified. An assessment was then made of the amount of information available regarding that transaction:
  - In 1,731 cases, there was sufficient hard copy to enable an investigator to undertake a full hard copy review, and the findings of those reviews are included in this Report.
  - In 707 cases in SCB, Dubai, the hard copy available was insufficient to enable an investigator to make an assessment of the case (for instance, if only a small number of very limited negotiation files were available). These transactions have been categorised as "Transactions Selected, Insufficient Evidence Available", as best efforts were made to undertake a full hard copy review, but no other records were available, so an adequate assessment of the transaction could not therefore be made.
- Further details on the transactions selected for Tier 1 hard copy review are provided in Appendix 1.

©2011 Promontory Financial Group, LLC. All rights reserved.

10

**CONFIDENTIAL**

# 1. Approach - Review of Tier 2 Electronic Data

**Tier 2: Electronic Trade Data Review**

- As stated earlier, the Tier 2 Review focussed on electronic trade data only, and the nature of the selection and review process varied according to the trade system and data available in that country. 387 transactions were reviewed in total.
- On some occasions, hard copy records were also requested, to provide further information on cases of interest. In particular, all the hard copy available was reviewed for Monarch Aviation in Singapore and Jetpower in Hong Kong (please refer to the findings sections for further details of these cases).

Further details on the transactions selected for Tier 2 electronic data review are provided in Appendix 1.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 1. Approach – Selection of Transactions for Review - Tier 1



- As previously communicated to you, our approach has involved selecting transactions for hard copy review using three separate criteria:

**Tranche 1 – 'Filtered' – 486 Iranian Transactions**

Transactions were selected from an analysis of electronic data, including the filtering of SWIFT MT700s and MT400s, linked messages, and electronic trade transaction records, in order to match on SDN terms, and geographic and bank identifiers. The same search terms were applied to these data sets as were applied during the Payments Review. Any potential contemporaneous SDN hits were reviewed. This sample was selected to ensure coverage of:
(a) a variety of transactions
(b) over the complete time period
(c) involving a variety of geographic identifiers, bank identifiers, or SDN identifiers
(d) involving a variety of amounts and products.

**Tranche 2 – 'Random' – 462 Iranian Transactions**

A number of transactions were selected randomly from each year of the Review Period for each type of product dated in that year (e.g., Import Letters of Credit, Export Letters of Credit, Documentary Collections).

**Tranche 3 – 'Judgmental' – 1,103 Iranian Transactions**

Transactions were also selected using our judgment during the course of the Review. Initially, transactions were selected by hits against key word searches. As the investigation progressed, additional transactions were selected using various criteria, for instance, when the review of a transaction had indicated an entity was high risk, or when document or e-mail reviews had highlighted a particular transaction meriting further attention.

©2011 Promontory Financial Group, LLC. All rights reserved.

12

CONFIDENTIAL

# 1. Approach - Tier 1 Investigative Methodology

**Phase 1: Information Capture And Initial Review**

- Investigators reviewed hard copy files, electronic trade data and electronic SWIFT messages in order to determine the parties involved in each transaction, banking relationships, payment flows, currencies used, involvement of sanctioned countries, SDNs and u-turn compliance.

- The transactions involved were often complex, and involved:
    - A series of linked stages, both in the initial trade finance transaction and often when discounting or financing deals.
    - SCB and other banks playing different roles at different times in the transaction.
    - A requirement for manual "linking" to build an overall picture of each transaction, with reference to electronic data and hard copy files to ensure all related transactions were considered.

- Any potential discrepancies and issues related to a transaction were noted by investigators as part of the analysis.

**Phase 2: Assessment Of Case**

- All entities involved in a transaction were researched and reviewed including applicants, beneficiaries, manufacturers, shipping agents, insurance companies, vessels, consignees, notify parties, second applicants, second beneficiaries, carriers.

- Research activities included:
    - SDN status
    - Verification of address
    - Media searches for negative news, including reporting of enforcement actions
    - Research on the existence of a possible U.S. nexus
    - Consideration of goods under potentially applicable U.S. regulations (e.g., the Export Administration Regulations ("EAR"), administered by the Department of Commerce, Bureau of Industry and Security ("BIS") and the Iranian Transactions Regulations ("ITR") administered by the Treasury Department, Office of Foreign Assets Control ("OFAC")).

- Tools used included:
    - Lexis-Nexis
    - World Check
    - World Compliance
    - Internet search engines.

- In addition, SCB's external counsel was consulted on questions of interpretation and clarification regarding the application of U.S. regulations to specific transactions.

**Quality Assurance**:

This review was subjected to extensive quality assurance procedures. Any identified errors were corrected and the trade finance investigators counseled on how to avoid the error in the future.

©2011 Promontory Financial Group, LLC. All rights reserved.

13

**CONFIDENTIAL**

## 1. Approach - Selection of Transactions for Review - Tier 2

- The transaction selection approach for the Tier 2 countries varied by location, as the structure and content of the data available was different. Country-specific details are provided in Appendix 1. A general summary approach diagram is provided here.

- Promontory's identification of transactions in scope was based on two overlapping extracts of data containing:

  - Transactions relating to customers identified from the local Core Banking System; and

  - Transactions involving sanctioned countries.

- Transactions were selected from both extracts on a random basis, with the selection being stratified by year and product to provide a representative spread across the population.

- The initial transactions were reviewed (with reference to the electronic trade data, see next page for the investigative methodology).

- Any transactions identified as possibly involving a contemporaneous SDN (or SDN designated by OFAC as a terrorist ("SDT", "SDGT" or "FTO") or proliferator of "weapons of mass destruction" ("NPWMD"), regardless of when the customer was so designated), in each case either from the Trade Finance Review work, or the corresponding Payments Review work, were reviewed.

- Following the initial work further judgmental selections were made. These transactions were selected giving consideration to:

  - The results of the Review in that location; and

  - The results of review work in other SCB locations (e.g. SCB, Dubai), which indicated that a particular SCB location was used by an entity which was identified as higher risk from other work; and

  - The results of the corresponding Payments Review, which reviewed the payments of customers related to sanctioned countries.



©2011 Promontory Financial Group, LLC. All rights reserved.

14

**CONFIDENTIAL**

# 1. Approach - Tier 2 Investigative Methodology

## Phase 1: Information Capture And Initial Review

- Investigators reviewed the electronic trade data relating to transactions selected for that country in order to determine the parties involved in each transaction, banking relationships, payment flows, currencies used, involvement of sanctioned countries, SDNs and u-turn compliance.

- The volume and granularity of the information available was often less than was available for an equivalent Tier 1 transaction, as the SWIFTs and the hard copy files were not in scope for Tier 2. However, the electronic trade data available normally identified the key parties involved in the transaction, the timing and currency of the transaction, and associated amendments. The full payments routing of the transaction, and the detailed shipping documentation, was not normally available from the electronic trade data alone.

- Potential discrepancies and issues related to a transaction were noted by investigators as part of the analysis.

## Phase 2: Assessment Of Case

- All entities involved in a transaction were researched and reviewed, including applicants, beneficiaries, manufacturers, shipping agents, insurance companies, vessels, consignees, notify parties, second applicants, second beneficiaries, carriers.

- Research activities included:
    - SDN status
    - Verification of address
    - Media searches for negative news, including reporting of enforcement actions
    - Research on the existence of a possible U.S. nexus
    - Consideration of the status of goods under potentially applicable U.S. regulations (e.g. EAR, ITR).

- Tools used included:
    - Lexis-Nexis
    - World Check
    - World Compliance
    - Internet search engines.

- In addition, SCB's external counsel was consulted on questions of interpretation and clarification regarding the application of U.S. regulations to specific transactions.

## Quality Assurance:

This review was subjected to extensive quality assurance procedures. Any identified errors were corrected and the trade finance investigators counseled on how to avoid the error in the future.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 1. Approach - Analysis of Iranian Transactions Selected for Review - Tier 1



Transactions Involving U.S. nexus, Not Potentially Licensable or Exempt, as detailed in Sections 3 to 5 of the Report.

Other transactions reviewed, including transactions that are classified in Sections 6 to 11 of the Report.

16

CONFIDENTIAL

## 1. Approach - Analysis of Iranian Transactions Selected for Review - Tier 2



■ Transactions Involving U.S. nexus, Not Potentially Licensable or Exempt, as detailed in Sections 3 to 4 of the Report.

■ Other transactions reviewed, including transactions that are classified in Sections 6 to 11 of the Report.

**CONFIDENTIAL**

17

# 1. Approach - Classification of Findings

The findings in this Report have been classified into the following categories:

**Transactions Involving U.S. Origin Goods**

- The review identified transactions for which there was evidence of goods of U.S. origin. Where the origin of the goods could be confirmed by looking at the Certificate of Origin, the transactions are included in the categories "Transactions Involving Non-EAR 99 U.S. Origin Goods" or "Transactions Involving Non-EAR 99 U.S. Origin Goods — Inconclusive Direct Export". Where there was some evidence that the goods were of U.S. origin, but the Certificate of Origin was not available or was not certified, the transactions are included in the category entitled "Transactions With Some Evidence of U.S. Origin Goods". In cases where it could be shown that all the goods in the transaction were of U.S. origin, the whole transaction value was included when valuing the transaction. In other cases, where some goods were shipped that appeared from the evidence to be of U.S. origin, and others were not, the value of the transaction for reporting purposes was the sum of the invoice value of the U.S. origin parts.

- The U.S. Origin goods transactions were reviewed to consider (in consultation with SCB's external counsel) whether the goods, based on their description, were listed on the Commerce Control List ("CCL"), or otherwise subject to licensing requirements under the EAR. Based on this analysis, the transactions were divided into two categories:

  - "Transactions Involving Non-EAR 99 U.S. Origin Goods"—This category includes transactions that involved U.S. origin goods which, based on their description in the relevant documentation, have been assessed likely to be listed on the CCL. Based on this assessment, it was determined that these transactions were unlikely to be considered EAR 99 goods, i.e., goods eligible for export from the United States without an export control license. For these transactions, consideration was also given to the status of the goods under the ITR re-export controls:

    - As assessment was made as to whether certain CCL-listed items would have been exempted from re-export controls on Iran under ITR § 560.414 because they were outside the United States and not the property of a U.S. person on and since May 7, 1995 and were not subject to re-export (as opposed to export) license requirements under U.S. regulations in effect prior to May 6, 1995.

    - Further, an assessment was made as to whether any non-exempt CCL-listed items were excluded from re-export controls because it was likely they comprised less than 10% of the value of a foreign-manufactured end product or were substantially transformed in accordance with ITR § 560.205(b).

  - "Transactions Involving EAR 99 U.S. Origin Goods—Inconclusive Direct Export"—This category includes transactions that involved U.S. origin goods not likely to be listed on the CCL but still subject to the EAR (i.e., not specifically exempted under EAR § 734.3). EAR 99 items are eligible for export from the United States to most of the world without an export license. Generally such items can be exported to Iran from third countries by non-U.S. persons without violating the EAR as long as Iran was not the intended destination when the items were exported from the United States.

    - For these transactions, consideration also was given to the probability that the underlying trade could be interpreted as a "direct" trade between the United States and Iran. The factors considered included the nature of the U.S. nexus in the transaction (e.g. if any U.S. parties were involved in the export of the goods), and the business of the Exporter (e.g. if the entity was involved in the import and export of goods to a range of counterparties and destinations, and if the entity appeared to only service one or more Iranian entities on a subsidiary, shell or agency basis). These features are noted in the commentary for each transaction set.

**Transactions That Involved U.S. Persons**

- This category consists of transactions that involved a U.S. nexus other than U.S. origin goods or payments cleared by a U.S. clearing bank. The "U.S. person" in these transactions was either a U.S. legal entity that played a role in a transaction (for example a U.S. shipping agency or a U.S. registered vessel), or a U.S. citizen. The Review considered U.S. citizens related to the transaction entities, but did not seek to identify the nationalities of SCB employees who may have been involved in the processing of the transaction.

**Transactions Identified as Non U-Turn Payments**

- This category contains transactions involving a U.S. clearing bank, and where the U.S. cleared payment relating to the transaction did not appear to follow u-turn routing.

©2011 Promontory Financial Group, LLC. All rights reserved.

18

CONFIDENTIAL

# 1. Approach - Classification of Findings (cont.)

**Transactions That Appeared to Follow U-turn Routing**
- This category contains transactions which either:
  - Involved a U.S. clearing bank, and the U.S. cleared payment relating to the transaction appeared to follow u-turn routing; or
  - Involved a U.S. clearing bank and another confirmed U.S. nexus and the U.S. cleared payment relating to the transaction appeared to follow u-turn routing, but based on available data there appeared to be a reasonable basis for concluding that the transaction was not otherwise prohibited.

**Transactions With No U.S. Nexus**
- This category contains transactions which were selected for hard copy review, but for which no U.S. nexus was confirmed (for example, where the transaction was in a currency other than USD, or where the transaction was cancelled or unutilized).

**Potentially Licensable Or Exempt Transactions**
- This category consists of transactions that, based on a review of available data, were found to fall within certain sub-categories based on OFAC exemptions, licenses, and statements of policy set out in the ITR applicable at the time the relevant transaction took place. These sub-categories are:
  - Agricultural; and
  - Medical.

**Transactions With Some Evidence of U.S. Origin Goods**
- Transactions with some evidence of U.S. origin are transactions which, during our review, were identified as having some indication of U.S. origin goods, but where there was no Certificate of Origin certified by a Chamber of Commerce. In addition to some specific transactions described in Section 7, there are two types of transactions included in this category:
  - **Mixed Origin:** Where the goods description, in the shipping documentation, for example, lists the United States as one of a number of countries from which the goods may have originated, and there is no conclusive evidence to prove or disprove which goods or portion of goods originated from the U.S.
  - **Unconfirmed Certificate of Origin:** Where there was a reference in electronic data or documentary evidence to some or all of the goods being of U.S. origin, but there was no Certificate of Origin certified by a Chamber of Commerce to prove or disprove the origin of the goods.

**Transactions Selected, Insufficient Evidence Available**
- This category consists of transactions that were selected for hard copy review, but the hard copy available was insufficient to enable an investigator to make an assessment of the case (for instance, if only a small number of very limited negotiation files were found).

**Transactions Outside Of The Review Period**
- Promontory reviewed a number of transactions where the hard copy review for these transactions established that a whole transaction, or some payments relating to a transaction, fell outside of the Review Period. In the interests of disclosure and transparency, further information regarding such transactions has been included in the "Transactions Outside of the Review Period" section.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

# 1. Approach - Reporting of Findings

**Explanatory Diagrams Used In This Report**

- Our Report makes extensive use of scatter graphs showing transaction amounts over time, and detailed transaction tables providing analysis of individual transactions.

- The scatter graphs and the detailed transaction tables note, among other things, whether the transaction was dated before or after April 12, 2005, which we understand is the date to which the statute of limitation runs for the purposes of consideration by OFAC, per agreement between OFAC and SCB.

- Further guidance on how these explanatory diagrams are structured is provided in Appendix 1.

**Explanatory Transaction Flowcharts Used In This Report**

- In addition, our Report makes extensive use of transaction flowcharts to explain representative transactions or patterns of transactions. The following five pages provide a generic description of an Export Letter of Credit, with SCB, Dubai acting on behalf of the UAE-based Exporter of goods (the "Beneficiary" in the Letter of Credit), who wished to sell and ship goods to an Importer in Iran (the "Applicant") in the Letter of Credit. This is the most common basic structure for the transactions reviewed during our work.

- The transaction flowcharts summarize the steps involved in the import/export trade in question, with each flowchart for a transaction covering (generally in chronological order):

  - The original decision/agreement to export goods from the United Arab Emirates to Iran.

  - The set-up phase of the Letter of Credit, where banks in Dubai and Iran are engaged to facilitate the Letter of Credit.

  - The transfer of documents once the goods are shipped, and the payment to the Beneficiary.

  - The reimbursement payment of the Negotiating Bank, with the payment being made in USD and cleared via the U.S. in a u-turn payment.

  - Page 25 combines the steps to provide a complete picture of a generic Export Letter of Credit transaction.

- Where transaction flowcharts are used in this Report, they are based on the transactions being reported on in that section, and are indicative of the typical pattern of business undertaken therein. Therefore at times there is variation between the different transactions in a set, and reference should be made to the information provided in the rest of the section.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 1. Approach – Generic Export Letter of Credit Transaction



CONFIDENTIAL

## 1. Approach - Generic Export Letter of Credit Transaction (Steps 1 to 3)



CONFIDENTIAL

## 1. Approach - Generic Export Letter of Credit Transaction (Steps 4 to 5)



Iranian Importer wishes to purchase goods from a UAE Exporter

**4** The UAE Exporter presents the shipping documents to a Negotiating Bank (typically SCB, Dubai), which forwards them to the Issuing Bank for acceptance.

**5** Upon receipt by the Issuing Bank, the documents are reviewed and, if accepted, the Issuing Bank authorizes the Negotiating Bank to claim reimbursement from the Reimbursing Bank (typically a second Iranian bank). The documents are forwarded to the Applicant (Importer). For a "payable at sight" Letter of Credit, the UAE Exporter is paid by the Negotiating Bank upon acceptance by the Issuing Bank.

23

CONFIDENTIAL

## 1. Approach - Generic Export Letter of Credit Transaction (Steps 6 to 9)



**Iranian Importer wishes to purchase goods from a UAE Exporter**

**6** The Negotiating Bank claims reimbursement in USD from the Reimbursing Bank.

**7** The Reimbursing Bank requests payment through a Foreign Correspondent Bank, which further instructs payment through a U.S. Correspondent Bank.

**8** The U.S. Correspondent Bank instructs payment to the Negotiating Bank through a U.S. Clearing Bank (typically SCB, New York).

**9** The U.S. Clearing Bank further credits the Negotiating Bank's USD account for the amount of the shipment. (Steps 7 through 9 comprise the "u-turn" Payment.)

24

**CONFIDENTIAL**

## 1. Approach - Generic Export Letter of Credit Transaction (All Steps)



**Iranian Importer wishes to purchase goods from a UAE Exporter**

1. At the request of Iranian Importer, a Letter of Credit is issued by an Iranian Bank (the Issuing Bank).
2. The Issuing Bank sends the Letter of Credit to the Advising Bank (typically SCB, Dubai), which establishes its authenticity.
3. The Advising Bank notifies the UAE Exporter of the issuance of the Letter of Credit. The UAE Exporter ships the goods to the Iranian Importer.
4. The UAE Exporter presents the shipping documents to a Negotiating Bank (typically SCB, Dubai), which forwards them to the Issuing Bank for acceptance.
5. Upon receipt by the Issuing Bank, the documents are reviewed and, if accepted, the Issuing Bank authorizes the Negotiating Bank to claim reimbursement from the Reimbursing Bank (typically a second Iranian bank). The documents are forwarded to the Applicant (Importer). For a "payable at sight" Letter of Credit, the UAE Exporter is paid by the Negotiating Bank upon acceptance by the Issuing Bank.
6. The Negotiating Bank claims reimbursement in USD from the Reimbursing Bank.
7. The Reimbursing Bank requests payment through a Foreign Correspondent Bank, which further instructs payment through a U.S. Correspondent Bank.
8. The U.S. Correspondent Bank instructs payment to the Negotiating Bank through a U.S. Clearing Bank (typically SCB, New York).
9. The U.S. Clearing Bank further credits the Negotiating Bank's USD account for the amount of the shipment. (Steps 7 through 9 comprise the "u-turn" Payment.)

**CONFIDENTIAL**

25

## 2. Summary of Results



©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 2. Summary of Results – Iranian Trade Finance Transactions

| U.S. Nexus Transactions, No Potential License or Exemption | Volume | % | Value | % |
|---|---|---|---|---|
| Transactions Involving Contemporaneous SDNs | 0 | | $0 | |
| Transactions Involving Non-EAR 99 U.S. Origin Goods | 33 | | $8,243,030 | |
| Transactions Involving a U.S. Person Other Than a Bank | 320 | | $13,263,448 | |
| Transactions That did not Appear to Follow Applicable U-turn Routing | 1 | | $412,094 | |
| **Total of U.S. Nexus Transactions, No Potential License or Exemption** | **354** | **14.5%** | **$21,918,572** | **0.5%** |

| Other Transactions | Volume | % | Value | % |
|---|---|---|---|---|
| Transactions That Appeared to Follow Applicable U-turn Routing | 605 | | $902,451,254 | |
| Transactions With No U.S. Nexus | 674 | | $1,323,818,313 | |
| U.S. Nexus Transactions, Potential License or Exemption | 2 | | $8,099,737 | |
| Transactions Involving EAR 99 U.S. Origin Goods – Inconclusive Direct Export | 48 | | $31,551,091 | |
| Transactions With Some Evidence of U.S. Origin Goods | 48 | | $41,176,074 | |
| Transactions Selected, Insufficient Evidence Available | 707 | | $1,851,208,855 | |
| **Total of Other Transactions** | **2,084** | **85.5%** | **$4,158,305,324** | **99.5%** |
| **Total of U.S. Nexus Transactions, No Potential License or Exemption and Other Transactions** | **2,438** | **100%** | **$4,180,223,896** | **100%** |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 3. Transactions Involving Non-EAR 99 U.S. Origin Goods

©2011 Promontory Financial Group, LLC. All rights reserved.

28

**CONFIDENTIAL**

## 3. Transactions Involving Non-EAR 99 U.S. Origin Goods

- The approach to the classification of transactions involving U.S. origin goods is detailed on page 18.
- This category includes transactions that involved U.S. origin goods which, based on their description in the relevant documentation, have been assessed likely to be listed on the CCL. Based on this assessment, it was determined that these transactions were unlikely to be considered EAR 99 goods, i.e., goods eligible for export from the United States without an export control license. For these transactions, consideration was also given to the status of the goods under the ITR re-export controls:
    - An assessment was made as to whether certain CCL-listed items would have been exempted from re-export controls on Iran under ITR § 560.414 because they were outside the United States and not the property of a U.S. person on and since May 7, 1995 and were not subject to re-export (as opposed to export) license requirements under U.S. regulations in effect prior to May 6, 1995.
    - Further, an assessment was made as to whether any non-exempt CCL-listed items were excluded from re-export controls because it was likely they comprised less than 10% of the value of a foreign-manufactured end product or were substantially transformed in accordance with ITR § 560.205(b).

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 3. Transactions Involving Non-EAR 99 U.S. Origin Goods (continued)

- Promontory's research (as described in Section 1 of this Report) identified trade finance transactions involving three former SCB customers—Monarch Aviation Pte Ltd, a Singapore trading company and former customer of SCB, Singapore ("Monarch Aviation"), Mac Aviation Limited, an Irish trading company and former customer of SCB, London ("Mac Aviation"), and Jetpower Industrial Ltd, a Hong Kong trading company and former customer of SCB, Hong Kong ("Jetpower")—that were either indicted themselves and/or had principals that were indicted, in each case, in the U.S. for, among other things, violations of the IEEPA, the ITR and U.S. export controls.

- The identification of these transactions prompted Promontory to conduct a further review to identify additional transactions involving Monarch Aviation, Mac Aviation, Jetpower, and related parties, and parties engaged in similar activity. This further review involved:
  - Running searches for key words (such as, "aviation") across available electronic data (including USD SWIFT messages and electronic trade data) to identify additional transactions for further review; and
  - To the extent available, reviewing the Bank's records (including Know Your Customer ("KYC") data and account statements) on any SCB customer identified in the Review to analyze the customer's activity through SCB during the Review Period.

- As mentioned with respect to Promontory's overall approach to its trade finance Review, the approach to reviewing trade finance transactions identified in this review differed depending on whether the SCB office involved was in a Tier 1 or Tier 2 country. An overview of the results of Promontory's Review, as well as the available evidence reviewed for each customer, is set forth in the commentary for each transaction set in this section.

| Transactions Involving Non-EAR 99 U.S. Origin Goods | Volume | Value | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| a. Monarch Aviation | 10 | $1,559,127 | 0 | $0 |
| b. Mac Aviation | 3 | $627,850 | 0 | $0 |
| c. Jetpower Industrial | 7 | $1,006,915 | 0 | $0 |
| d. Downtown Trading | 4 | $624,727 | 0 | $0 |
| e. Blue Sky Group | 2 | $1,300,000 | 1 | $600,000 |
| f. Other Transactions | 7 | $3,124,411 | 1 | $2,790,000 |
| Total | 33 | $8,243,030 | 2 | $3,390,000 |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

### 3. Transactions Involving Non-EAR 99 U.S. Origin Goods



| | Volume | Value | Post-April 12, 2005 Volume | Post-April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Involving Non-EAR 99 U.S. Origin Goods | 33 | $8,243,030 | 2 | $3,390,000 |

Note: Graphs in this presentation are an approximate representation of payment dates and amounts.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 3.a. Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation – Relationship Overview[1]

**Overview**

- Monarch Aviation is owned and controlled by husband and wife, Brian Douglas Woodford, a UK citizen, and Laura Wang-Woodford, a dual U.S. and UK citizen. According to a credit report contained in SCB's account records, Monarch Aviation's principal activities were described as "manufacturers, dealers, hirers & repairers of aeroplanes, hovercraft and its related parts".

- On January 15, 2003, Woodford and Wang-Woodford were charged in an indictment for, among other things, violations of the IEEPA, and U.S. export controls laws. A superseding indictment (the "Indictment") charging Wang-Woodford with operating Jungda International Pte Ltd. ("Jungda"), a Singapore-based successor to Monarch Aviation, was returned on May 22, 2008.

- According to the Indictment, between January 1998 and December 2007, the defendants exported U.S. aircraft parts from the United States to Monarch and Jungda in Singapore and Malaysia and then re-exported those items to companies in Tehran, Iran, without obtaining the required U.S. government licenses. The Indictment further alleges that, as part of the charged conspiracy, the defendants falsely listed Monarch and Jungda as the ultimate recipients of the parts on export documents filed with the U.S. government. The aircraft parts illegally exported to Iran are alleged to include aircraft shields, shears, "o" rings and switch assemblies.

- Laura Wang-Woodford was arrested on December 23, 2007 and later pleaded guilty to conspiring to violate the U.S. trade embargo by exporting aircraft components to Iran. She was sentenced to 46 months in prison and subject to a forfeiture of USD $500,000. According to publicly available information, Brian Woodford remains a fugitive.

- SCB has informed Promontory that, during the Review Period, SCB, Singapore maintained accounts for Monarch Aviation; its principals, Woodford and Wang-Woodford; and certain of its affiliates. Details regarding these accounts will be covered in a separate report on SCB's historical business with Monarch Aviation and its related parties.

**Transaction Overview**

- Trade Finance Transactions processed by SCB consisted of Export Letters of Credit that were advised to Monarch Aviation by SCB, Dubai and/or SCB, Singapore. Some of the Singapore presentations of documents were processed by SCB, Dubai as they were then financed under the "Markazi" credit facility (described in the previously submitted report 'Standard Chartered Bank Dubai and London, Iranian Trade Finance Business, Part A: Standard Trade Business'). The remainder were negotiated or collected by SCB, Singapore who reimbursed themselves direct from the issuing bank or advising bank (where other than SCB).

---

[1] This overview does not constitute a full report on SCB's historical business with Monarch Aviation. Facts gathered in the course of SCB's review of its business with Monarch Aviation and its related parties during the Review Period will be the subject of a separate report.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 3.a. Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation - Transaction Details

**U.S. Origin Goods Transactions Likely To Fall Outside The Scope Of EAR 99**

- There were 10 transactions involving Letters of Credit with 33 negotiations, with a total value of $1,559,127, which involved the shipment of U.S. origin aircraft parts being sold by Monarch Aviation to Iran Aircraft Industries ("IACI"), Iran Helicopter Support and Renewal Co. ("IHSRC"), and Iran Aircraft Manufacturing Industries ("HESA").

- The goods were shipped by Iran Air from Kuala Lumpur Airport, Malaysia, to Tehran Airport, Iran.

- The goods had numerous product descriptions, including: Blades, Bolts, Bushes, Bar Assy, Control Assy, Vanes, Gear Box Assy, Bearings, Rings, Couplings, Diaphragms, Seals, Valves, etc.

- Negotiations under the Letters of Credit were payable "At Sight" with those transactions refinanced by SCB, Dubai under the "Markazi" credit facility, being subject to reimbursement periods of up to 360 days. Funds from the financing were paid At Sight to Monarch Aviation's account with SCB, Singapore through the latter's USD account with SCB, London, who in turn received the funds into its USD nostro account with SCB, New York from SCB, Bahrain's Offshore Booking Unit ("OBU"). At maturity, the reimbursement claim repaid the loan.

- For negotiations not subject to refinancing, SCB, Singapore claimed reimbursement from the Advising and/or Issuing Bank with the latter effecting payment through SCB, New York onto SCB, London's account with SCB, New York for further credit to SCB, Singapore and then Monarch Aviation.

**Other Transactions Reviewed For Monarch Aviation**

- There were 316 transactions, with a total value of $12,110,565, that involved Monarch Aviation and have been classified as Transactions Involving a U.S. Person (on account of Laura Wang-Woodford's dual U.S. citizenship). Please refer to Section 4.a. for further details.

- There were 3 transactions, with a total value of $404,418, that involved Monarch Aviation and have been classified as Transactions Outside of the Review Period. Please refer to Section 12 for further details.

- All these transactions followed a similar pattern (in terms of the Beneficiaries and Applicants involved, and the flow of goods) to those transactions reported in this section of the Report, but the majority of them were not refinanced by SCB, Dubai under the "Markazi" credit facility.

**Availability Of Evidence Regarding Monarch Aviation**

- For SCB, Dubai and SCB, Singapore, all available hard copy files were reviewed. In SCB, Singapore, this consisted of 27 (of 66) Letters of Credit Advising files and 92 (of 552) Negotiation files.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

### 3.a. Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation – Transaction Summary



| | Volume | Value | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation | 10 | $1,559,127 | 0 | $0 |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

### 3.a. Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation - Transaction flow (Steps 1 to 4)



**Iranian Importer Iran Aircraft Industries (IACI) wished to purchase aircraft parts from Singapore Exporter Monarch Aviation Pte**

**1** At the request of Importer IACI, a Letter of Credit was issued by Bank Refah, Iran, and sent to SCB, Singapore to advise Exporter Monarch Aviation, Singapore, while reimbursement authorization was sent to Iran Overseas Investment Bank, London (now Bank Saderat, as of March, 2002).

**2** SCB, Singapore (the Advising Bank) advised Letter of Credit to Monarch Aviation.

**3** Upon shipment of goods, Monarch Aviation sent documents to SCB, Singapore to collect against Letter of Credit.

**4** SCB, Singapore presented documents under Bank Refah Letter of Credit to SCB, Dubai (the Negotiating Bank) for negotiation and payment through SCB, New York.

**Aircraft Parts**
**EAR 99** – 100% U.S. Origin
– No

35

**CONFIDENTIAL**

## 3.a. Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation - Transaction flow (Steps 5 to 8)

**Iranian Importer Iran Aircraft Industries (IACI) wished to purchase aircraft parts from Singapore Exporter Monarch Aviation Pte**

5. Upon acceptance of the documents, SCB, Dubai effected payment to Singapore by financing the payment for Bank Refah, Iran, under the Bank Markazi credit facility and sent instruction for the loan to SCB, Bahrain's OBU to effect payment. Loan was covered by 100% cash deposit from SCB, Dubai for the same period. Simultaneously, SCB, Dubai sent shipping documents to Bank Refah.
6. SCB, Bahrain's OBU sent proceeds of the loan as payment of Letter of Credit through SCB, New York to credit SCB, Singapore through SCB, London, by order of SCB, Bahrain's OBU.
7. SCB, London received funds and paid SCB, Singapore.
8. SCB, Singapore received funds and credited Monarch Aviation.

**Aircraft Parts**

– 100% U.S. Origin

EAR 99 – No

CONFIDENTIAL

### 3.a. Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation - Transaction flow (Steps 9 to 11)



**Iranian Importer Iran Aircraft Industries (IACI) wished to purchase aircraft parts from Singapore Exporter Monarch Aviation Pte**

**9** At maturity of the loan, SCB, Dubai presented the reimbursement claim to Iran Overseas Investment Bank, London.

**10** Iran Overseas Investment Bank, London, sent payment instruction to Lloyds, London to pay USD to SCB, New York, to the credit of SCB, Bahrain's OBU, via JP Morgan Chase, New York.

**11** Upon receipt of payment, SCB, Bahrain's OBU sent instructions to SCB, New York to pay SCB, Dubai the deposit amount plus interest and kept the loan interest.

**Aircraft Parts**

— 100% U.S. Origin

**EAR 99** — No

37

**CONFIDENTIAL**

### 3.a. Transactions Involving Non-EAR 99 U.S. Origin Goods - Monarch Aviation - Transaction flow (All Steps)



**Iranian Importer Iran Aircraft Industries (IACI) wished to purchase aircraft parts from Singapore Exporter Monarch Aviation Pte**

1. At the request of importer IACI, a Letter of Credit was issued by Bank Refah, Iran, and sent to SCB, Singapore to advise Exporter Monarch Aviation, Singapore, while reimbursement authorization was sent to Iran Overseas Investment Bank, London (now Bank Saderat, as of March, 2002).
2. SCB, Singapore (the Advising Bank) advised Letter of Credit to Monarch Aviation.
3. Upon shipment of goods, Monarch Aviation sent documents to SCB, Singapore to collect against Letter of Credit.
4. SCB, Singapore presented documents under Bank Refah Letter of Credit to SCB, Dubai (the Negotiating Bank) for negotiation and payment through SCB, New York.
5. Upon acceptance of the documents, SCB, Dubai effected payment to Singapore by financing the payment for Bank Refah, Iran, under the Bank Markazi credit facility and sent instruction for the loan to SCB, Bahrain's OBU to effect payment. Loan was covered by 100% cash deposit from SCB, Dubai for the same period. Simultaneously, SCB, Dubai sent shipping documents to Bank Refah.
6. SCB, Bahrain's OBU sent proceeds of the loan as payment of Letter of Credit through SCB, New York to credit SCB, Singapore through SCB, London, by order of SCB, Bahrain's OBU.
7. SCB, London received funds and paid SCB, Singapore.
8. SCB, Singapore received funds and credited Monarch Aviation.
9. At maturity of the loan, SCB, Dubai presented the reimbursement claim to Iran Overseas Investment Bank, London.
10. Iran Overseas Investment Bank, London, sent payment instruction to Lloyds, London to pay USD to SCB, New York, to the credit of SCB, Bahrain's account, via JP Morgan Chase, New York.
11. Upon receipt of payment, SCB, Bahrain's OBU sent instructions to SCB, New York to pay SCB, Dubai the deposit amount plus interest and kept the loan interest.

**Aircraft Parts**

— 100% U.S. Origin

**EAR 99** – No

CONFIDENTIAL

38

## 3.b. Transactions Involving Non-EAR 99 U.S. Origin Goods – Mac Aviation Relationship Overview[1]

**Overview**

- Mac Aviation Limited ("Mac Aviation") was incorporated in April 1993 and has a registered address at Cloonmull House, Drumcliffe, Co. Sligo, Ireland. According to publicly available information, it engages in the purchase and sale of aircraft and helicopter parts.

- Mac Aviation was indicted, along with its owners and controllers, Thomas McGuinn, Sean McGuinn, and Sean Byrne, under seal in 2008 for, among other things, violations of the IEEPA, the ITR, and U.S. export controls.

- According to the Indictment, beginning as early as June 2005 through July 2008, the defendants solicited purchase orders from customers in Iran for U.S. origin aircraft parts and then sent requests for the parts to U.S. companies. The indictment further alleges that the defendants wired money to banks in the United States as payment for these parts and concealed from U.S. sellers the ultimate end-use and Iranian end-users of the purchased parts. The Indictment alleges that the defendants caused the export of these parts from the United States to third countries, including Malaysia, before sending their shipment onward to Iran.

- Based on publicly available information, the defendants dealt with the Iranian military through Hossein Ali Khoshnevisrad, an Iranian national from Tehran, Iran, who acted as their proxy. Khoshnevisrad used two Iranian companies—Ariasa AG (Tehran) and Onakish Co. (Kish Island, Iran) — to do business with Mac Aviation. HESA, an entity added to the OFAC's SDN list on September 17, 2008 as a weapons of mass destruction proliferator, and IACI reportedly paid the two Iranian companies to place the orders with Mac Aviation.

- According to publicly available information, we understand that the U.S. Authorities are attempting to extradite Thomas McGuinn to stand trial in the United States.

- SCB has informed Promontory that, during the Review Period, SCB, London maintained accounts for Mac Aviation. Details regarding these accounts will be covered in a separate report on SCB's historical relationship with Mac Aviation.

**Transaction Overview**

- Trade Finance Transactions processed by SCB comprised Export Letters of Credit that were advised to Mac Aviation by SCB, Dubai and/or London with SCB, Dubai and/or London acting as either advising, collecting, negotiating, or the financing bank under the "Markazi" credit facility (described in the previously submitted report 'Standard Chartered Bank Dubai and London, Iranian Trade Finance Business, Part A: the Standard Trade Business'). These transactions related to the export of U.S. origin aircraft parts to Iran being purchased by IACI, HESA and IHSRC. All available hard copy files were reviewed.

---

[1] This overview does not constitute a full report on SCB's historical business with Mac Aviation. Facts gathered in the course of SCB's review of its business with Mac Aviation and its related parties during the Review Period will be the subject of a separate report.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 3.b. Transactions Involving Non-EAR 99 U.S. Origin Goods - Mac Aviation - Transaction Details

**U.S. Origin Goods Transactions Likely To Fall Outside The Scope Of EAR 99**

- There were 3 transactions involving Export Letters of Credit with 8 negotiations, with a total value of $627,850, which involved the shipment of U.S. origin aircraft parts being sold by Mac Aviation. The goods were shipped from Brussels Airport to Tehran Airport by Iran Air (using K-Line as handling agents) and were purchased by IHSRC, IACI or HESA.
- The goods had numerous product descriptions, including: Bearings, Bolts, Boot Assy, Couplings, Gear Spurs, Mast Assy, Motor Pumps, Pinions, Power Supply, Rings, Stabilisers, Tubes and Valve Flow Dividers.
- The proceeds of the Export Letter of Credit negotiations were credited to Mac Aviation's accounts in SCB, London. For those transactions financed under the "Markazi" credit facility, the funds were paid by SCB, Bahrain's OBU to SCB, London's USD account with SCB, New York for credit to Mac Aviation's account with SCB, London. For those transactions not subject to financing, reimbursement was claimed by SCB, London from the reimbursement agent (usually Iran Overseas Investment Bank, London), with funds subsequently being received into SCB, London's USD account with SCB, New York for credit to Mac Aviation.

**Other Transactions Reviewed For Mac Aviation**

- There were 11 transactions, with a total value of $4,031,325, that involved Mac Aviation and have been classified as Transactions With Some Evidence of U.S. Origin Goods. Please refer to Section 10.d. for further details.
- There were 7 transactions, with a total value of $3,296,371 that involved Mac Aviation and have been classified as Transactions Outside of the Review Period. Please refer to Section 12 for further details.
- All these transactions followed a similar pattern (in terms of the parties involved, the flow of goods and the payments) to those transactions reported in this section of the Report.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

### 3.b. Transactions Involving Non-EAR 99 U.S. Origin Goods - Mac Aviation - Transaction Summary



| | Volume | Value | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Involving Non-EAR 99 U.S. Origin Goods - Mac Aviation | 3 | $627,850 | 0 | $0 |

©2011 Promontory Financial Group, LLC. All rights reserved

CONFIDENTIAL

## 3.b. Transactions Involving Non-EAR 99 U.S. Origin Goods - Mac Aviation - Transaction flow (Steps 1 to 4)



**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Mac Aviation**

**1** At the request of Importer Iran Helicopter Support & Renewal, a Letter of Credit was issued by Bank Refah (the Issuing Bank) and sent to SCB, London to advise Exporter Mac Aviation in Ireland while reimbursement authorization was sent to Iran Overseas Investment Bank, London (now Bank Saderat, as of March, 2002).

**2** SCB, London (the Advising Bank) advised Letter of Credit to Exporter Mac Aviation, Sligo, Ireland.

**3** Upon shipment of goods, Mac Aviation sent documents to SCB, London for collection against Letter of Credit.

**4** SCB, London presented documents under Bank Refah Letter of Credit to SCB, Dubai (the Negotiating Bank) for negotiation and payment through SCB, New York.

**Helicopter Parts**

– 100% U.S. Origin

**EAR 99**– No

42

CONFIDENTIAL

## 3.b. Transactions Involving Non-EAR 99 U.S. Origin Goods - Transaction flow (Steps 5 to 7)

**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Mac Aviation**

5. Upon acceptance of documents, SCB, Dubai effected payment to London by financing the payment for Bank Refah under the Bank Markazi credit facility and sent instruction for loan to SCB, Bahrain's OBU. To effect payment, loan was covered by 100% cash deposit from SCB, Dubai for the same period. Simultaneously, SCB, Dubai sent shipping documents to Bank Refah, Iran.

6. SCB, Bahrain's OBU booked loan and sent proceeds as payment of Letter of Credit through SCB, New York to pay SCB, London by order of SCB, Bahrain's OBU.

7. SCB, London received funds and credited Mac Aviation's account.

**Helicopter Parts**

– 100% U.S. Origin

EAR 99 – No

CONFIDENTIAL

## 3.b. Transactions Involving Non-EAR 99 U.S. Origin Goods - Mac Aviation - Transaction flow (Steps 8 to 10)



**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Mac Aviation**

**8** At maturity of loan, SCB, Dubai presented reimbursement claim to Iran Overseas Investment Bank, London (the Reimbursing Bank).

**9** Iran Overseas Investment Bank, London sent payment instructions to Lloyds, London to credit USD to SCB, Bahrain's OBU via SCB, New York, through Chase Manhattan, New York.

**10** Upon receipt of payment, SCB, Bahrain's OBU sent instructions to SCB, New York to pay SCB, Dubai the deposit amount plus interest and kept the loan interest.

**Helicopter Parts**
– 100% U.S. Origin
**EAR 99** – No

44

CONFIDENTIAL

## 3.b. Transactions Involving Non-EAR 99 U.S. Origin Goods - Mac Aviation - Transaction flow (All Steps)

**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Mac Aviation**

1. At the request of Importer Iran Helicopter Support & Renewal, a Letter of Credit was issued by Bank Refah (the Issuing Bank) and sent to SCB, London to advise Exporter Mac Aviation in Ireland while reimbursement authorization was sent to Iran Overseas Investment Bank, London (now Bank Saderat, as of March, 2002).
2. SCB, London (the Advising Bank) advised Letter of Credit to Exporter Mac Aviation, Sligo, Ireland.
3. Upon shipment of goods, Mac Aviation sent documents to SCB, London for collection against Letter of Credit.
4. SCB, London presented documents under Bank Refah Letter of Credit to SCB, Dubai (the Negotiating Bank) for negotiation and payment through SCB, New York.
5. Upon acceptance of documents, SCB, Dubai effected payment to London by financing the payment for Bank Refah under the Bank Markazi credit facility and sent instruction for loan to SCB, Bahrain's OBU. To effect payment, loan was covered by 100% cash deposit from SCB, Dubai for the same period. Simultaneously, SCB, Dubai sent shipping documents to Bank Refah, Iran.
6. SCB, Bahrain's OBU booked loan and sent proceeds as payment of Letter of Credit through SCB, New York to pay SCB, London by order of SCB, Bahrain's OBU.
7. SCB, London received funds and credited Mac Aviation's account.
8. At maturity of loan, SCB, Dubai presented reimbursement claim to Iran Overseas Investment Bank, London (the Reimbursing Bank).
9. Iran Overseas Investment Bank, London sent payment instructions to Lloyds, London to credit USD to SCB, Bahrain's OBU via SCB, New York, through Chase Manhattan, New York.
10. Upon receipt of payment, SCB, Bahrain's OBU sent instructions to SCB, New York to pay SCB, Dubai the deposit amount plus interest and kept the loan interest.

**Helicopter Parts**

– 100% U.S. Origin

**EAR 99** – No

CONFIDENTIAL

## 3.c. Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower Industrial - Relationship Overview[1]

**Overview**

- Jetpower Industrial Ltd ("Jetpower") was located at 9/F, Granville House, 41C Granville Road, Tsim Sha Tsui, Hong Kong.
- Internet research indicates that Jetpower's business activity was trading aircraft parts.
- Jetpower was added to the Unverified List by BIS on July 16, 2004. The Unverified List advises exporters that the involvement of these persons as a party to a proposed transaction constitutes a "red flag".
- In 2008, John Chan, a.k.a. Chan Hok Shek or Hok Shek Chan, a Hong Kong citizen, was indicted in the District of Massachusetts for, among other things, conspiring to, and attempting to, export from the United States defense articles designated on the U.S. Munitions List. The Indictment was unsealed on March 25, 2010. Court documents link John Chan to Jetpower. On December 3, 2010, according to publicly available information, Chan pleaded guilty to violating U.S. export law for conspiring and attempting to illegally export munitions without required licenses.
- Internet research shows that Jetpower was also reportedly retained by Iranian officials and acted as a front in purchasing Microturbo SA TRI-60 Turbojet engines, components and technical assistance from France and China for C-802 anti-ship missiles; has repeatedly exported arms illicitly to Iran, according to U.S. officials; and in 1993, reportedly pleaded guilty in Hong Kong to smuggling $2.5m worth of U.S. fighter jet parts to Iran.
- SCB has informed Promontory that, during the Review Period, SCB, Hong Kong maintained accounts for Jetpower. Details regarding these accounts will be covered in a separate report on SCB's historical relationship with Jetpower.

**Transaction Overview**

- Trade Finance Transactions processed by SCB comprised Export Letters of Credit advised to Jetpower either by SCB, Hong Kong or SCB, Dubai (sometimes at the request of SCB, Singapore) covering helicopter parts of U.S. origin purchased by IHSRC and carried by Iran Air from Kuala Lumpur to Tehran, Iran.
- These Letters of Credit were negotiated by SCB, Dubai and were financed under the "Markazi" credit facility (described in the previously submitted report 'Standard Chartered Bank Dubai and London, Iranian Trade Finance Business, Part A: Standard Trade Business'). The proceeds of the loan were used for payment of these "sight" Letters of Credit.

---

[1] This overview does not constitute a full report on SCB's historical business with Jetpower. Facts gathered in the course of SCB's review of its business with Jetpower during the Review Period will be the subject of a separate report.

©2011 Promontory Financial Group, LLC. All rights reserved.

46

**CONFIDENTIAL**

### 3.c. Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower Industrial – Transaction Details

**U.S. Origin Goods Transactions Likely To Fall Outside The Scope Of EAR 99**

- There were 31 negotiations under 7 Letters of Credit, with a total value of $1,006,915, which involved the shipment of U.S. origin aircraft parts being sold by Jetpower to IHSRC.
- The goods were shipped by Iran Air from Kuala Lumpur Airport, Malaysia, to Tehran Airport, Iran.
- The goods had numerous product descriptions, including: Lighting Parts; Knobs; Filter Element; Shaft Assy; Relays; Resistor Fixed; Wires; Bezel & Glass; Connectors; Switches; Diodes; Meter Movement; Switch Pressure.
- Negotiations under the Letters of Credit were payable "At Sight" with those transactions financed through SCB, Dubai under the "Markazi" credit facility, being subject to reimbursement periods of up to 360 days. Funds from the financing were paid At Sight to Jetpower, through its USD account with Bank Melli, Hong Kong. Bank Melli, Hong Kong in turn received the funds into its USD nostro account with its U.S. correspondent bank via SCB, New York from SCB, Bahrain's OBU. At maturity (for instance, following 360 days), the reimbursement payment was used to repay the loan booked with SCB, Bahrain's OBU that had funded the refinancing.
- For negotiations not subject to financing/negotiation through SCB, Dubai (i.e. which were negotiated through SCB, Hong Kong), the latter claimed reimbursement from Iran Overseas Investment Bank, London, who in most cases instructed Lloyds Bank, London to pay through SCB, New York on to SCB, Hong Kong's account with SCB, Singapore. SCB, Hong Kong then on-paid funds through the local CHATS clearing system to Bank Melli, Hong Kong for the account of Jetpower.

**Other Transactions Reviewed For Jetpower**

- There were 20 transactions, with a total value of $921,421, that involved Jetpower and have been classified as Transactions With Some Evidence of U.S. Origin Goods. Please refer to Section 10.d. for further details.
- There were 10 transactions, with a total value of $1,034,649, that involved Jetpower and have been classified as Transactions Outside of the Review Period. Please refer to Section 12 for further details.
- All transactions followed a similar pattern (in terms of the parties involved, the flow of goods and the payments) to those transactions reported in this section of the Report.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

### 3.c. Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower Industrial – Transaction Summary



| | Volume | Value | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower Industrial | 7 | $1,006,915 | 0 | $0 |

@2011 Promontory Financial Group, LLC. All rights reserved.

48

**CONFIDENTIAL**

## 3.c. Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower (Steps 1 to 6)

**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Hong Kong Exporter Jetpower Industrial Ltd.**

1. At the request of Importer Iran Helicopter Support & Renewal, a Letter of Credit was issued by Bank Refah, Iran (the Issuing Bank), and sent to SCB, Singapore to advise Jetpower, Hong Kong, while reimbursment authorization was sent to Iran Overseas Investment Bank (IOIB, now Bank Saderat, London).
2. SCB, Singapore sent the Letter of Credit to SCB, Hong Kong to advise Exporter Jetpower.
3. SCB, Hong Kong (the Advising Bank) advised the Letter of Credit to Exporter Jetpower.
4. Bank Refah, Iran amended the Letter of Credit to be available with SCB, Dubai.
5. Exporter Jetpower shipped the goods and presented documents to Bank Melli, Hong Kong, with request to present documents under the Bank Refah Letter of Credit with SCB, Dubai.
6. Bank Melli, Hong Kong presented the documents to SCB, Dubai (the Negotiating Bank) for negotiation and payment under Refah Letter of Credit.

**Helicopter Parts**

– 100% U.S. Origin

**EAR 99** – No

## 3.c. Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower (Steps 7 to 10)



**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Hong Kong Exporter Jetpower Industrial Ltd.**

**7** Upon acceptance of the documents, SCB, Dubai effected payments to Bank Melli, Hong Kong, by financing payment for Bank Refah under Bank Markazi credit facility and sent instruction for loan to SCB, Bahrain's OBU to effect payment. Loan covered by 100% cash deposit by SCB, Dubai for the same period.

**8** SCB, Bahrain's OBU booked the loan and sent proceeds as payment under the Letter of Credit through SCB, New York to pay Bank Melli, Hong Kong, via NatWest, New York; NatWest, London; and Bank Melli, London, by order of SCB, Bahrain's OBU.

**9** SCB, Dubai sent instructions to Bank Melli, London to pay Bank Melli, Hong Kong upon receipt of funds.

**10** Bank Melli, London received funds and credited Bank Melli, Hong Kong.

**Helicopter Parts**

— 100% U.S. Origin

**EAR 99** — No

50

**CONFIDENTIAL**

## 3.c. Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower (Steps 11 to 13)

**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Hong Kong Exporter Jetpower Industrial Ltd.**

**11** At maturity of the loan, SCB, Dubai presented the reimbursement claim to IOIB London (Bank Saderat, London) for payment.

**12** Iran Overseas Investment Bank, London sent payment instructions to Lloyds, London to credit USD to SCB, Bahrain's OBU via SCB, New York, through JP Morgan Chase, New York.

**13** SCB, Bahrain's OBU sent instructions to SCB, New York to pay SCB, Dubai the deposit amount less interest.

**Helicopter Parts**

– 100% U.S. Origin

EAR 99 – No

CONFIDENTIAL

## 3.c. Transactions Involving Non-EAR 99 U.S. Origin Goods - Jetpower (All Steps)



**Importer Iran Helicopter Support & Renewal wished to purchase helicopter parts from Hong Kong Exporter Jetpower Industrial Ltd.**

1. At the request of Importer Iran Helicopter Support & Renewal, a Letter of Credit was issued by Bank Refah, Iran (the Issuing Bank), and sent to SCB, Singapore to advise Jetpower, Hong Kong, while reimbursment authorization was sent to Iran Overseas Investment Bank (IOIB, now Bank Saderat, London).
2. SCB, Singapore sent a Letter of Credit to SCB, Hong Kong to advise Exporter Jetpower.
3. SCB, Hong Kong (the Advising Bank) advised the Letter of Credit to Exporter Jetpower Industrial.
4. Bank Refah, Iran amended the Letter of Credit to be available with SCB, Dubai.
5. Exporter Jetpower shipped goods and presented documents to Bank Melli, Hong Kong, with a request to present documents under Refah Letter of Credit with SCB, Dubai.
6. Bank Melli, Hong Kong presented documents to SCB, Dubai (the Negotiating Bank) for negotiation and payment under Refah Letter of Credit.
7. Upon acceptance of the documents, SCB, Dubai effected payments to Bank Melli, Hong Kong, by financing payment for Refah under Bank Markazi credit facility and sent instruction for loan to SCB, Bahrain's OBU to effect payment. Loan covered by 100% cash deposit by SCB, Dubai for the same period.
8. SCB, Bahrain's OBU booked the loan and sent proceeds as payment of Letter of Credit through SCB, New York to pay Bank Melli, Hong Kong, via London through its correspondents, Nat West, US and Nat West, London, by order of SCB, Bahrain's OBU.
9. Bank Melli, London to pay Bank Melli, Hong Kong upon receipt of funds.
10. Bank Melli, London received funds and credited Bank Melli, Hong Kong.
11. At maturity of the loan, SCB, Dubai presented the reimbursement claim to IOIB London (Bank Saderat, London) for payment.
12. Iran Overseas Investment Bank, London sent payment instructions to Lloyds, London to credit USD to SCB, Bahrain's OBU via SCB, New York, through JP MorganChase, New York.
13. SCB, Bahrain's OBU sent instructions to SCB, New York to pay SCB, Dubai the deposit amount less interest.

**Helicopter Parts**

– 100% U.S. Origin

**EAR 99**– No

CONFIDENTIAL

52

### 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading – Relationship Overview

**Overview**

- Downtown Trading Limited ("Downtown") is located in Labuan, Malaysia, a small offshore financial center. Despite extensive research conducted, Promontory has identified limited publicly available information on the company's business activities.

- The SCB, Dubai hard copy file contains correspondence linking Downtown Malaysia to a company of the same name in London which has a registered address of 55 Stockleigh Hall, Prince Albert Road, London NW8 7LB.

- Directors of the London based company include Jasdeep Musafir and Harpreet Chadha. Mr. Musafir signed correspondence on behalf of Downtown Malaysia, which suggests that it could have been a shell company operated from London. Our research indicates that the London based company was dissolved on January 15, 2002, but re-established under a new company registration on April 14, 2005.

- Our research also shows that Mr. Musafir was also listed as a Director of Imperial Land Developments Ltd, registered to the same address as Downtown Trading Ltd, London, with a common Director being Harpreet Chadha. A further company, Ardour Solutions Ltd of London, also has Mr. Harpreet Chadha and Monita Chadha listed as Directors.

- Downtown was not an account-based relationship customer of SCB, Dubai or SCB, Malaysia. SCB acted solely as the Advising and Negotiating bank for the Letters of Credit processed.

**Transaction Overview**

- Trade Finance Transactions processed by SCB, Dubai comprised Export Letters of Credit advised to Downtown by SCB, Malaysia, which were later amended to make the Letters of Credit available at the counters of SCB, Dubai in order for them to be financed under the "Markazi" credit facility (described in the previously submitted report 'Standard Chartered Bank Dubai and London, Iranian Trade Finance Business, Part A: Standard Trade Business').

- The Letters of Credit covered the shipment of aircraft engine spare parts of U.S. origin purchased by IACI and carried by Iran Air from Kuala Lumpur to Tehran, Iran.

- Documents were presented to SCB, Dubai on behalf of Downtown by Maybank International (Malaysia).

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading – Transaction Detail

**U.S. Origin Goods Transactions Likely To Fall Outside The Scope Of EAR 99**

- There were 4 transactions involving Letters of Credit with 8 negotiations with a total value of $624,727, which involved the shipment of U.S. origin aircraft engine parts being sold by Downtown to IACI.
- The goods were shipped by Iran Air from Kuala Lumpur Airport, Malaysia to Tehran Airport, Iran and were described as "Blade Stg" with various numbers attached, such as 2, 4, 6, or 12, which may denote the type of blade.
- Negotiations under these Letters of Credit were payable At Sight but were settled from funds drawn under the "Markazi" credit facility for periods up to 360 days, with reimbursement then obtained at maturity from Iranian Overseas Investment Bank, London.
- The proceeds were paid At Sight to Downtown's account at Maybank International (Malaysia) by SCB Bahrain's OBU through SCB, New York and Citibank, New York, for credit to Maybank's nostro account with the latter.

**Other Transactions Reviewed For Downtown**

- There were 3 transactions, with a total value of $181,560, which involved Downtown and have been classified as Transactions With Some Evidence of U.S. Origin Goods. Please refer to Section 10.d. for further details.
- There were 3 transactions, with a total value of $261,288, that involved Downtown and have been classified as Transactions Outside of the Review Period. Please refer to Section 12 for further details.
- All transactions followed a similar pattern (in terms of the parties involved, the flow of goods and the payments) to those transactions reported in this section of the Report.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

### 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading – Transaction Summary



| | Volume | Value | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading | 4 | $624,727 | 0 | $0 |

©2011 Promontory Financial Group, LLC. All rights reserved

**CONFIDENTIAL**

## 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading (Steps 1 to 4)



**Iranian Importer Iran Aircraft Industries Co. wished to purchase aircraft spare parts from Malaysian/UK Exporter Downtown Trading Ltd.**

**1** At the request of Importer Iran Aircraft Industries Co., Letter of Credit issued by Bank Sepah (the Issuing Bank) and sent to SCB, Malaysia to advise Exporter Downtown Trading, while reimbursement authorization sent to Bank Sepah, London.

**2** SCB, Malaysia (the Advising Bank) advised Letter of Credit to Exporter Downtown Trading Ltd., Malaysia.

**3** Upon shipment of goods, Downtown Trading sent documents to Maybank, Malaysia to collect against Letter of Credit.

**4** Maybank, Malaysia presented documents under Bank Sepah Letter of Credit to SCB, Dubai (the Negotiating Bank) for negotiation and payment through Citibank, New York (Letter of Credit amended to be available with SCB, Dubai).

**Aircraft Parts**

– 100% U.S. Origin

**EAR 99** – No

56

**CONFIDENTIAL**

## 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading (Steps 5 to 7)

**Iranian Importer Iran Aircraft Industries Co. wished to purchase aircraft spare parts from Malaysian/UK Exporter Downtown Trading Ltd.**

**5** Upon acceptance of documents, SCB, Dubai effected payment to Maybank, Malaysia by financing the payment for Bank Sepah under the Bank Markazi credit facility, and sent instruction for loan to SCB, Bahrain's OBU to effect payment. Loan covered by 100% cash deposit from SCB, Dubai for the same period. Simultaneously, SCB, Dubai sent shipping documents to Bank Sepah, Iran.

**6** SCB, Bahrain's OBU booked the loan and sent proceeds as payment of Letter of Credit through SCB, New York to pay Citibank, New York for account with Maybank, Malaysia by order of SCB, Bahrain's OBU.

**7** Citibank, New York received funds from SCB, New York and paid Maybank, Malaysia, which effected payment to Downtown Trading.

**Aircraft Parts**

– 100% U.S. Origin

**EAR 99** – No

CONFIDENTIAL

## 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading (Steps 8 to 10)

**Iranian Importer Iran Aircraft Industries Co. wished to purchase aircraft spare parts from Malaysian/UK Exporter Downtown Trading Ltd.**

**8** At maturity of loan, SCB, Dubai presented reimbursement claim to Bank Sepah, London.

**9** Bank Sepah, London sent payment instructions to a UK Correspondent Bank to pay USD to SCB, New York, to the credit of SCB, Bahrain's OBU account, via a U.S. Correspondent Bank.

**10** Upon receipt of payment, SCB, Bahrain's OBU instructed SCB, New York to pay SCB, Dubai the deposit amount plus interest and kept the loan interest spread.

**Aircraft Parts**

– 100% U.S. Origin

**EAR 99** – No

CONFIDENTIAL

### 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading (All Steps)



Iranian Importer Iran Aircraft Industries Co. wished to purchase aircraft spare parts from Malaysian/UK Exporter Downtown Trading Ltd.

1. At the request of Importer Iran Aircraft Industries Co., Letter of Credit issued by Bank Sepah (the Issuing Bank) and sent to SCB, Malaysia to advise Exporter Downtown Trading, while reimbursement authorization sent to Bank Sepah, London.

2. SCB, Malaysia (the Advising Bank) advised Letter of Credit to Exporter Downtown Trading Ltd., Malaysia.

3. Upon shipment of goods, Downtown Trading sent documents to Maybank, Malaysia to collect against Letter of Credit.

4. Maybank, Malaysia presented documents under Bank Sepah Letter of Credit to SCB, Dubai (the Negotiating Bank) for negotiation and payment through Citibank, New York (Letter of Credit amended to be available with SCB, Dubai).

5. Upon acceptance of documents, SCB, Dubai effected payment to Maybank, Malaysia by financing the payment for Bank Sepah under the Bank Markazi credit facility, and sent instruction for loan to SCB, Bahrain's OBU to effect payment. Loan covered by 100% cash deposit from SCB, Dubai for the same period. Simultaneously, SCB, Dubai sent shipping documents to Bank Sepah, Iran.

6. SCB, Bahrain's OBU booked the loan and sent proceeds as payment of Letter of Credit through SCB, New York to pay Citibank, New York for account with Maybank, Malaysia by order of SCB, Bahrain's OBU.

7. Citibank, New York received funds from SCB, New York and paid Maybank, Malaysia, which effected payment to Downtown Trading.

8. At maturity of loan, SCB, Dubai presented reimbursement claim to Bank Sepah, London.

9. Bank Sepah, London sent payment instructions to a UK Correspondent Bank to pay USD to SCB, New York, to the credit of SCB, Bahrain's OBU account, via a U.S. Correspondent Bank.

10. Upon receipt of payment, SCB, Bahrain's OBU instructed SCB, New York to pay SCB, Dubai the deposit amount plus interest and kept the loan interest spread.

**Aircraft Parts**

– 100% U.S. Origin

**EAR 99** – No

CONFIDENTIAL

59

## 3.d. Transactions Involving Non-EAR 99 U.S. Origin Goods - Downtown Trading – Transaction Schedule

| Case Reference | Applicant | Beneficiary | Transaction Date | Value |
|---|---|---|---|---|
| 3.d.i | Iran Aircraft Industries | Downtown Trading Ltd. | 2/14/2002 | $343,950 |
| 3.d.ii | Iran Aircraft Industries | Downtown Trading Ltd. | 11/27/2002 | $135,935 |
| 3.d.iii | Iran Aircraft Industries | Downtown Trading Ltd. | 3/6/2002 | $141,436 |
| 3.d.iv | Iran Aircraft Industries | Downtown Trading Ltd. | 3/20/2002 | $3,206 |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

**Applicant: Iran Aircraft Industries / Iran**
**Beneficiary: Downtown Trading Ltd. / Malaysia**

| | | | |
|---|---|---|---|
| **Value:** | | | $343,950 |
| **Transaction Date:** | | | 2/14/2002 |

| | | | |
|---|---|---|---|
| **Program:** | Iran | **Product Type:** | Advising Export Letter of Credit and Payment; Markazi Refinance |
| **Case Reference:** | 3.d.i | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $343,950 | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $343,950 | **Total Payments:** | $343,950 |
| **U.S. Persons:** | Clearer: | SCB, New York | **Certificate of Origin:** | 100% U.S. |
| **Description:** | Shipment of U.S. origin aircraft parts from a Malaysian associate of a UK general trader to an Iranian government subsidiary responsible for manufacture and repair of aircraft. | **Goods Description:** | Aircraft Engine Spare Parts (blades) |
| **EAR 99 Item:** | No, Aviation Goods | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | **Other Possible U.S. Connection:** | No |
| **Other Details:** | "Available With" Bank was amended from SCB, Malaysia to SCB, Dubai in order to comply with the Bank Markazi credit facility. | | |



©2011 Promontory Financial Group, LLC. All rights reserved.

61

CONFIDENTIAL

## Applicant: Iran Aircraft Industries / Iran
## Beneficiary: Downtown Trading Ltd. / Malaysia

| Value: | $135,935 |
| --- | --- |
| Transaction Date: | 11/27/2002 |

| Program: | Iran | | Product Type: | Advising Export Letter of Credit and Payment; Markazi Refinance |
| --- | --- | --- | --- | --- |
| Case Reference: | 3.d.ii | | Post April 12, 2005: | No |
| Letter of Credit Amount: | $335,000 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $135,935[1] | | Total Payments: | $135,935 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | 100% U.S. |
| Description: | Shipment of U.S. origin aircraft parts from a Malaysian subsidiary of a UK general trader to an Iranian government subsidiary responsible for manufacture and repair of aircraft. | | Goods Description: | Aircraft Engine Spare Parts (blades) |
| EAR 99 Item: | No, Aviation Goods | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | No | | Other Possible U.S. Connection: | No |
| Other Details: | "Available With" Bank was amended from SCB, Malaysia to SCB, Dubai in order to comply with the Bank Markazi credit facility. | | | |



[1] Other payments related to this Letter of Credit are reported in Section 10.d. on Unconfirmed Aviation Goods.

©2011 Promontory Financial Group, LLC. All rights reserved.

62

CONFIDENTIAL

## Applicant: Iran Aircraft Industries / Iran
## Beneficiary: Downtown Trading Ltd. / Malaysia

| Value: | $141,636 |
|---|---|
| Transaction Date: | 3/6/2002 |

| | | | | |
|---|---|---|---|---|
| **Program:** | Iran | | **Product Type:** | Advising Export Letter of Credit and Payment; Markazi Refinance |
| **Case Reference:** | 3.d.iii | | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $364,400 | | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $141,636[1] | | **Total Payments:** | $141,636 |
| **U.S. Persons:** | Clearer: | SCB, New York | **Certificate of Origin:** | 100% U.S. |
| **Description:** | Shipment of U.S. origin aircraft parts from a Malaysian associate of a UK general trader to an Iranian government subsidiary responsible for manufacture and repair of aircraft. | | **Goods Description:** | Aircraft Spare Parts (blades, vanes) |
| **EAR 99 Item:** | No, Aviation Goods | | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | | **Other Possible U.S. Connection:** | No |
| **Other Details:** | "Available With" Bank was amended from SCB, Malaysia to SCB, Dubai in order to comply with the Bank Markazi credit facility. | | | |



[1] Other payments related to this Letter of Credit are reported in Section 10.d. on Unconfirmed Aviation Goods.

©2011 Promontory Financial Group, LLC. All rights reserved.

63

**CONFIDENTIAL**

## Applicant: Iran Aircraft Industries / Iran
## Beneficiary: Downtown Trading Ltd. / Malaysia

| | | |
|---|---|---|
| **Value:** | | $3,206 |
| **Transaction Date:** | | 3/20/2002 |

| | | | |
|---|---|---|---|
| **Program:** | Iran | **Product Type:** | Payment under Advising Export Letter of Credit; Markazi Refinance |
| **Case Reference:** | 3.d.iv | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | Unknown | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $3,206 | **Total Payments:** | $3,206 |
| **U.S. Persons:** | Clearer: SCB, New York | **Certificate of Origin:** | 100% US |
| **Description:** | Shipment of U.S. origin aircraft parts from a Malaysian associate of a UK general trader to an Iranian government subsidiary responsible for manufacture and repair of aircraft. | **Goods Description:** | Aircraft Spare Parts (screw, teflon plate, sleeve) |
| **EAR 99 Item:** | No | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | **Other Possible U.S. Connection:** | No |
| **Other Details:** | Advising Export Letter of Credit file not found. | | |



©2011 Promontory Financial Group, LLC. All rights reserved.

64

**CONFIDENTIAL**

## 3.e. Transactions Involving Non-EAR 99 U.S. Origin Goods - Blue Sky Group – Relationship Overview [1]

**Overview**

- Blue Sky Aviation ("Blue Sky") is a UAE registered corporation in the Ajman Free Zone. According to its Articles of Association dated May 28, 2001, it was, at that time, 50/50 owned by Mr. Ali Reza Habib Moghimi and Gholam Reza Ghodrat Mahmoudi. By 2003, the Ajman Free Zone company certification records the latter individual as the sole owner.

- Blue Sky appears to act as a general ticketing and procurement agency for the sale and/or lease of aircraft to Mahan Air.

- Mahan Air ("Mahan") is a Tehran-based commercial airline operating in Iran, the Middle East, Europe, CIS and Asia. Account documentation shows Mahan to be 96% owned by Mol-Al-Movahedin Organization (a Tehran-based Credit Co-Operative), for which the ultimate beneficial ownership is unclear from the account file. Our research of publicly available sources has also been inconclusive in this regard. There are 3 other minority owners. Mahan Air also had a branch office in Dubai ("Mahan, Dubai").

- Mahan Air General Trading LLC ("Mahan Air General Trading") is a Dubai-based company for which its 2001 Articles of Association lists the owners as: Mr. Khalid Ismail Abdul Jabbar Al Rahma, UAE National (51%); Mr. Hamid Hossein Arabnegad Khanooki, Iranian National (25%); and Mr. Ali Reza Habibollah Moghimi (see also Blue Sky above), Iranian National (24%). Mr. Khanooki is the Managing Director of Mahan Air, Tehran and also a Director of Mahan, Dubai, as is Mr. Hamid Zoka Azadi, who is the Manager of the Board of Directors of Mahan Air, Tehran.

- Aeronautical & Security (FZE) ("A&S") is a UAE corporation located in Sharjah with its corporate license recording Mr. Edgard Amiel (a French National) as its sole owner. According to the company license dated November 18, 2003, its activity is trading in "Aircraft Equipment, Spare Parts and Aircraft Security Equipment".

- SCB has informed Promontory that, during the Review Period, SCB, Dubai maintained accounts for Blue Sky and certain of the related parties detailed above (together, the "Blue Sky Group"). Details regarding these accounts will be covered in a separate report on SCB's historical relationship with the Blue Sky Group.

**Transaction Overview**

- The Trade Finance Transactions reviewed for the Blue Sky Group during the Review included Export Collections, Letters of Credit, and an Advanced Payment Guarantee. All related to the acquisition and sale of aircraft, or the provision of other financing for Blue Sky and the related entities detailed above. The deals are often complex and, as stated in the footnote, further detail will be provided in a separate report.

---

[1] This overview does not constitute a full report on SCB's historical business with the Blue Sky Group. Facts gathered in the course of SCB's review of its business with the Blue Sky Group during the Review Period will be the subject of a separate report.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 3.e. Transactions Involving Non-EAR 99 U.S. Origin Goods - Blue Sky Group - Transaction Details

**U.S. Origin Goods Transactions Likely To Fall Outside The Scope Of EAR 99**

There are two transactions in this category for the Blue Sky Group. The first transaction is described below, and the second is detailed overleaf.

**Export Collection with a Total Value Of $29,750,000, of which an estimated value of $600,000 is believed to relate to U.S. Origin Goods**

- There was 1 Export Collection with a total value of $29,750,000, with approximately $600,000 relating to the shipment of U.S. origin goods.
- The seller of the goods was Blue Sky and the buyer was Mahan, Tehran, Iran; the transaction was collected through Bank Sepah, Tehran, Iran with the Bill of Exchange payable 540 days after the negotiation date.
- The transaction was processed by SCB, Dubai on September 14, 2004. Correspondence on file indicates that the transaction was discounted, 95% being sold down to the following institutions: Deutsche Forfait AG; West LB; Abu Dhabi Commercial Bank; Arab Banking Corporation; and Gulf International Bank.
- Repayment under the Collection was received by SCB, Dubai on February 9, 2006 from Credit Suisse, Zurich on behalf of Bank Sepah/Mahan Air.
- Hard copy documents state that the goods were an Airbus A320-232 plus two IAE engines and one Auxiliary Power Unit. The hard copy evidence includes:
    - Copies of the Collection documents, including Blue Sky's Invoice and a certificate of air worthiness for one Airbus A320-232.
    - A Bill of Sale, referring also to the airbus and two engines, "IAE V2527-A5 MSN V10382 and V10383 and one APU [Auxiliary Power Unit] Hamilton Sundstrand APS 3200 MSN 1060".
- Our research indicates that:
    - This aircraft was first delivered in July 1998 to United Airlines, transferred to Blue Wings on March 5, 2004 and then to Mahan shortly thereafter on March 30, 2004. According to planespotters.net, the aircraft is currently in storage pending transfer to Iran Air.
    - The "V" series engines were manufactured by International Aero Engines ("IAE"), jointly owned by Pratt and Whitney (32.5%), Rolls Royce (32.5%) MTU of Germany (12%) and Japanese Aero Engines Corp (23%). Our research indicates that the location of the manufacture of the engines was likely to be the United Kingdom.
    - Our research indicates that the Auxiliary Power Unit was likely to have been manufactured in the United States.
    - Promontory obtained a current third party valuation of a similar model of the Hamilton Sundstrand Auxiliary Power Unit which estimates its cost at up to $600,000. Given the date of the transaction this is likely to be an overestimate.
- The estimated value of the Auxiliary Power Unit has been included as a Transaction Involving Non-EAR 99 U.S. Origin Goods and, in the absence of a separate price on the evidence available, the value of the third party estimate, $600,000, has been used.
- The remaining $29,150,000 value of the transaction, relating to the Airbus A320-232 and its engines, has been classified as a Transaction That Appeared to Follow U-Turn Routing, as no U.S. nexus has been identified apart from the U.S. cleared USD payment.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 3.e. Transactions Involving Non-EAR 99 U.S. Origin Goods - Blue Sky Group - Transaction Details (continued)

**Export Letter Of Credit For $700,000:**

- The Letter of Credit was issued by Bank Melli, Sharjah on August 15, 2004, on behalf of Mahan Air General Trading, through SCB, Dubai in favor of A&S.

- The negotiation was for $700,000 and related to the shipment of one Aircraft Engine CF6-50C2, manufactured by GE and shipped from Luxemburg to Tehran, Iran. The date the engine was exported from the United States is not known, although our research indicates that it was manufactured in 1983. Our research indicates that the location of manufacture of the engines was likely to have been within the United States.

- The account statement for A&S shows a payment of $420,000 was made to a company by the name of "Aerowings" on September 9, 2004, the same day as the payment under the Letter of Credit Negotiation of $697,247 was credited to the account of A&S. This may be indicative of the source of the engine.

- The Bill of Sale included in the export documents for the drawing under this Letter of Credit shows that title to the engine was transferred from Aeronautical & Security to Mahan Air in Iran.

- All of the parties involved in this transaction do not, on the current evidence available, appear to be directly related to Blue Sky. However, the transaction involves Mahan Air General Trading, which based on a review of available information, appears to be an entity possibly related to Blue Sky and so has been treated as part of the same Blue Sky Group for reporting purposes.

**Other Transactions Reviewed for the Blue Sky Group**

- There are 3 transactions, with a total value of $60,150,000, that have been classified as Transactions That Appear to Follow U-turn Routing in Section 6 of this Report; there is one transaction, with a total value of $32,500,000 that has been classified under Transactions With No U.S. Nexus, reported in Section 7 of this Report.

| | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Involving Non-EAR 99 U.S. Origin Goods - Blue Sky Group | 2 | $1,300,000 | 1 | $600,000 |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 3.e. Transactions Involving Non-EAR 99 U.S. Origin Goods - Blue Sky Group



Importer Mahan Air wished to purchase an Airbus aircraft, engines and an APU from Exporter Blue Sky Aviation

1 An Export Collection for $29,750,000 was processed by SCB, Dubai on September 14, 2004, on behalf of Blue Sky Aviation with Mahan Air as drawee and the collecting bank, Bank Sepah, Iran. The Bill of Exchange was payable 540 days after the negotiation date and guaranteed for payment by Bank Sepah.

2 E-mails indicate that the transaction was fully discounted on the basis of 95% selldown to the following: Deutsche Forfait AG, West LB, Abu Dhabi Commercial Bank, Arab Banking Corporation, and Gulf International Bank.

3 Repayment from Mahan under the collection was received by SCB, Dubai from Credit Suisse, Zurich on behalf of Bank Sepah/Mahan Air on February 9, 2006.

**Airbus Aircraft and Engines**

— Mixed Origin Goods

**EAR 99** — No (APU only)

68

CONFIDENTIAL

## 3.e. Transactions Involving Non-EAR 99 U.S. Origin Goods - Blue Sky Group

**Importer Mahan Air General Trading wished to purchase an aircraft engine from Exporter Aeronautical & Security**

1. On behalf of Importer Mahan Air General Trading, a Letter of Credit was issued by Bank Melli, UAE and sent to SCB, Dubai to advise Beneficiary Aeronautical & Security (FZE) Sharjah.
2. Documents were presented to SCB, Dubai, which forwarded them to Bank Melli, UAE for acceptance and payment.
3. Bank Melli instructed Credit Suisse, Zurich, which in turn instructed Bank of New York, New York (its USD clearing bank) to pay USD to SCB, New York for account of SCB, Dubai, which then credited Aeronautical & Security's account.

**Aircraft Engine**

– 100% U.S. origin

**EAR 99**- No

CONFIDENTIAL

| Applicant: Mahan Air / Iran | | | Value: | $600,000 |
|---|---|---|---|---|
| Beneficiary: Blue Sky Aviation / UAE | | | Transaction Date: | 2/9/2006 |

| Program: | Iran | | Product Type: | Export Collection |
|---|---|---|---|---|
| Case Reference: | 3.e.i | | Post April 12, 2005: | Yes |
| Collection Amount: | $29,750,000 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $600,000 | | Total Payments: | $600,000[1] |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | Not evidenced |
| Description: | Export Collection for $29,750,000 for the shipment of an Airbus A320-232 MSN 857 Registration No EP-MHJ plus two engines IAE V2527-A5 MSN V10382 and V10383 and one APU Hamilton Sundstrand APS 3200 MSN 1060 | | Goods Description: | Shipment of an Airbus A320-232 MSN 857 Registration No EP-MHJ plus two engines IAE V2527-A5 MSN V10382 and V10383 and one Auxiliary Power Unit Hamilton Sundstrand APS 3200 MSN 1060. |
| EAR 99 Item: | No – Aviation Goods | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | Yes | | Other Possible U.S. Connection: | No |
| Other Details: | [1] Payment made for Auxiliary Power Unit was estimated at $600,000. The remaining $29,150,000 is reported in Section 6.i of this Report. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## Applicant: Mahan Air General Trading / Iran
## Beneficiary: Aeronautical & Security / UAE

| Value: | $700,000 |
|---|---|
| Transaction Date: | 9/9/2004 |

| Program: | Iran | | Product Type: | Export Letter of Credit |
|---|---|---|---|---|
| Case Reference: | 3.e.ii | | Post April 12, 2005: | No |
| Letter of Credit Amount: | $700,000 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $700,000 | | Total Payments: | $700,000 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | 100% U.S. origin |
| Description: | Purchase of U.S. origin goods by a UAE company, Mahan Air General Trading, for shipment to Iran. | | Goods Description: | 1 U.S. origin Aircraft Engine CF6-50C2 (Serial number 517950) |
| EAR 99 Item: | No – Aviation engine | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | Yes | | Other Possible U.S. Connection: | No |
| Other Details: | | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 3.f. Transactions Involving Non-EAR 99 U.S. Origin Goods - Other Transactions

**Transactions Involving Non-EAR 99 U.S. Origin Goods – Other Transactions**

- There are 7 transactions with a total value of $3,124,411:

  - 1 transaction reviewed, with a value of $2,790,000, which involved UAE Beneficiary Diamonds Steel [1], shipping hydraulic pumps to the Iranian Applicant Khoram Sanat Producing Co. A review of the pumps shipped indicated a likelihood that the goods would have required a license for valid re-export to Iran.

  - 2 transactions reviewed, with a total value of $219,396, which involved UAE Beneficiary Mapna [1], shipping U.S. origin goods to Iranian Applicant Iran Power Development Company ("IPDC").

    - 1 transaction involves the shipment of fire fighting equipment, which includes pumps. A review of the pumps indicated a likelihood that that the goods would have required a license for valid re-export to Iran.

    - 1 transaction involves the shipment of fire fighting equipment, including detection apparatus which would require a license for re-export to Iran. Additionally, a review of the shipping documents in the file shows a certification of goods to the Iranian Applicant by the U.S. manufacturer, indicating a likelihood of direct export.

  - 1 transaction reviewed, with a value of $83,238, involved UAE Beneficiary Attibco shipping U.S. origin aviation parts for agricultural aircraft to Vigeh Airways Inc. in Iran. No other transactions were identified involving Attibco.

  - 3 transactions, with a total value of $31,788, involved the shipment of U.S. origin aircraft engine parts being sold by FP Aeroparts to IACI. The goods were shipped by Iran Air from Dubai International Airport to Tehran, Iran and were described as "Aircraft Spare Parts" as per P/I FP/APS/0954/01 DD 020308. No other transactions were identified involving FP Aeroparts.

**Overview of Transaction Parties[1]**

- FP Aeroparts Middle East FZCO's ("FP Aeroparts") website www.fpapsme.com indicates that it is a Dubai-based trading company, located in the Jebel Ali Freezone, engaged in the business of supplying and repairing aviation spare parts. Its main activities are based in the Gulf Region.

- Dun & Bradstreet lists Attibco FZE ("Attibco") as a UAE importer/exporter of transportation equipment and supplies that has 18 employees, with Mohammed M. Mukhtar as Chairman and CEO. Internet directory www.uaeincorp.com lists Attibco Aviation Services as a UAE importer/exporter of aircraft spare parts and aviation-related materials and equipment. An internet search for the Attibco website reveals that it is no longer active.

---

[1] For further information regarding Diamonds Steel and Mapna, please see Sections 9.a. and 9.b. of this Report respectively, as the majority of transactions involving those entities have been categorized as Transactions Involving EAR 99 U.S. Origin Goods – Inconclusive Direct Export.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

### 3.f. Transactions Involving Non-EAR 99 U.S. Origin Goods - Other Transactions – Transaction Summary



| | Volume | Value | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Involving Non-EAR 99 U.S. Origin Goods – Other Transactions | 7 | $3,124,411 | 1 | $2,790,000 |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 3.f. Transactions Involving Non-EAR 99 U.S. Origin Goods - Attibco Aviation



Importer Vigeh Airways Inc. (Iran) wished to purchase aircraft spare parts from Exporter Attibco Aviation Services (UAE)

**1** At the request of Importer Vigeh Airways Inc., Bank Keshavarzi (the Issuing Bank) issued a Letter of Credit for $186,000 and advised SCB, Dubai.

**2** Upon shipment of goods, Attibco Aviation Services presented the Letter of Credit documents to SCB, Dubai (the Negotiating Bank), for value $83,328, which then forwarded them to Bank Keshavarzi for approval.

**3** Upon receipt of acceptance from Bank Keshavarzi, SCB, Dubai debited the bank account of Bank Keshavarzi for the amount of the shipment.

**4** SCB, Dubai then credited the bank account of Attibco Aviation Services for the amount of the shipment.

### Aircraft Spare Parts

– 100% U.S. Origin

*EAR 99*– No

74

**CONFIDENTIAL**

## 3.f. Transactions Involving Non-EAR 99 U.S. Origin Goods - FP Aeroparts

**Importer Iran Aircraft Industries (Iran) wished to purchase aircraft spare parts from Exporter FP Aeroparts Middle East FZCO (UAE)**

1. At the request of Iran Aircraft Industries, Bank Refah Kargaran (the Issuing Bank), issued a Letter of Credit to SCB, Dubai to advise to the Exporter FP Aeroparts.
2. Upon shipment of goods, FP Aeroparts presented the Letter of Credit documents to SCB, Dubai (the Negotiating Bank), which then forwarded them to Bank Refah Kargaran for approval.
3. Upon receipt of acceptance from Bank Refah Kargaran, SCB, Dubai claimed reimbursement from Bank Melli Iran, Dubai (the Reimbursing Bank).
4. Bank Melli Iran, Dubai instructed Credit Suisse, Zurich, which further instructed Bank of New York, New York to pay to SCB, New York.
5. SCB, New York (the Clearing Bank) further credited SCB, Dubai's account for the amount of the shipment.
6. SCB, Dubai then credited the bank account of FP Aeroparts Middle East for the amount of the shipment.

**Aircraft Spare Parts**

– 100% U.S. Origin

EAR 99 – No

CONFIDENTIAL

## 3.f. Transactions Involving Non-EAR 99 U.S. Origin Goods - Other Transactions - Transaction Schedule

| Case Reference | Applicant | Beneficiary | Transaction Date | Value |
|---|---|---|---|---|
| 3.f.i | Khoram Sanat Producing Co | Diamonds Steel FZE | 6/20/2005 | $2,790,000 |
| 3.f.ii | Iran Power Development Company (IPDC) | Mapna International FZE | 1/8/2004 | $217,800 |
| 3.f.iii | Vigeh Airways Inc. | Attibco Aviation Services | 4/19/2004 | $83,237 |
| 3.f.iv | Iran Aircraft Industries | FP Aeroparts Middle East FZCO | 5/18/2003 | $11,784 |
| 3.f.v | Iran Aircraft Industries | FP Aeroparts Middle East FZCO | 6/2/2004 | $11,000 |
| 3.f.vi | Iran Aircraft Industries | FP Aeroparts Middle East FZCO | 5/18/2003 | $8,994 |
| 3.f.vii | Iran Power Development Company (IPDC) | Mapna International FZE | 2/24/2003 | $1,596 |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## Applicant: Khoram Sanat Producing Co. / Iran
## Beneficiary: Diamonds Steel FZE. / UAE

| Value: | $2,790,000 |
| --- | --- |
| Transaction Date: | 6/20/2005 |

| Program: | Iran | | Product Type: | Export Negotiation Under Letter of Credit: Discounted Export Documents: Risk Participation Loan |
| --- | --- | --- | --- | --- |
| Case Reference: | 3.f.i | | Post April 12, 2005: | Yes |
| Letter of Credit Amount: | $2,790,000 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $2,790,000 | | Total Payments: | $2,790,000 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | 100% U.S. origin |
| Description: | Shipment of goods by a UAE steel manufacturer to an affiliate entity in Iran. | | Goods Description: | "Hydraulic Pump 160 Liter; Electromotor For Hydraulic Press With All Accessories" |
| EAR 99 Item: | No | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | No |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | Yes | | Other Possible U.S. Connection: | No |
| Other Details: | The goods would likely have required a license for re-export to Iran. Pumps designed for industrial service and for use with an electrical motor of 5 HP or greater require a license for re-export to Iran under ECCN 2B999.j. | | | |



©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## Applicant: Iran Power Development Company / Iran
## 1st Beneficiary: Mapna Int. /UAE   2nd Beneficiary: Ses-Enser Engineering

| Value: | $217,800 |
| --- | --- |
| Transaction Date: | 1/8/2004 |

| Program: | Iran | | Product Type: | Advising Export Letter of Credit and Payment of Transferred Proceeds Under Export Letter of Credit |
| --- | --- | --- | --- | --- |
| Case Reference: | 3.f.ii | | Post April 12, 2005: | No |
| Letter of Credit Amount: | $876,979 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $217,800[1] | | Total Payments: | 4 payments for $859,319.46 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | U.S. and Italy |
| Description: | Shipment of goods to Iranian government power development company via a UAE subsidiary of an Iranian power plant management company, who obtained the goods from an Italian engineering company. | | Goods Description: | "Fire Fighting Equipment" |
| EAR 99 Item: | No | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | No |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | Yes | | Other Possible U.S. Connection: | No |
| Other Details: | Fire fighting equipment includes pumps of U.S. and Italian origin in one of four shipments. The goods would likely have required a license for re-export to Iran. Pumps designed for industrial service and for use with an electrical motor of 5 HP or greater require a license for re-export to Iran under ECCN 2B999.j. SCB, Dubai is "Available With" Bank. | | | |



[1] Being the value of the U.S. goods contained in the various shipments under this Letter of Credit.

©2011 Promontory Financial Group, LLC. All rights reserved.

78

CONFIDENTIAL

## Applicant: Vigeh Airways Inc. / Iran
## Beneficiary: Attibco Aviation Services / UAE

| Value: | $83,237 |
| --- | --- |
| Transaction Date: | 4/19/2004 |

| | | | |
| --- | --- | --- | --- |
| **Program:** | Iran | **Product Type:** | Advising Export Letter of Credit and Payment |
| **Case Reference:** | 3.f.iii | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $186,000 | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $83,237[1] | **Total Payments:** | $83,237 |
| **U.S. Persons:** | Clearer: None | **Certificate of Origin:** | 100% U.S. |
| **Description:** | Shipment of aircraft parts from a UAE trader in aircraft parts to an Iranian entity, about which limited information is available. | **Goods Description:** | "Thrush Commander Aircraft Spare Parts" |
| **EAR 99 Item:** | No | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | **Other Possible U.S. Connection:** | Yes |
| **Other Details:** | Shipping documents indicate that parts are to be used in an agricultural aircraft. Internet research cannot confirm manufacturer of parts or compatible aircraft for parts. SCB, Dubai is the "Available With" Bank. [1] The difference between the payment amount and the value on the Certificate of Origin represents freight charges. | | |



©2011 Promontory Financial Group, LLC. All rights reserved.

79

**CONFIDENTIAL**

## Applicant: Iran Aircraft Industries / Iran
## Beneficiary: FP Aeroparts / UAE

| | |
|---|---|
| **Value:** | **$11,783** |
| **Transaction Date:** | **5/18/2003** |

| Program: | Iran | | Product Type: | Advising Export Letter of Credit and Payment |
|---|---|---|---|---|
| **Case Reference:** | 3.f.iv | | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $21,000 | | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $11,783 | | **Total Payments:** | $7,944 and $3,839 |
| **U.S. Persons:** | Clearer: | SCB, New York | **Certificate of Origin:** | 100% U.S. |
| **Description:** | Shipment of U.S. origin aircraft parts from a UAE trader in aircraft parts to an Iranian government subsidiary responsible for manufacture and repair of aircraft. | | **Goods Description:** | Aircraft spare parts as per P/I FP/APS/0954/01 DD 020308 |
| **EAR 99 Item:** | No | | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | | **Other Possible U.S. Connection:** | No |
| **Other Details:** | | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## Applicant: Iran Aircraft Industries / Iran
## Beneficiary: FP Aeroparts / UAE

| Value: | $11,000 |
| --- | --- |
| Transaction Date: | 6/2/2004 |

| | | | | |
| --- | --- | --- | --- | --- |
| **Program:** | Iran | | **Product Type:** | Payment under Import Letter of Credit |
| **Case Reference:** | 3.f.v | | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $11,000 | | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $11,000 | | **Total Payments:** | $11,000 |
| **U.S. Persons:** | Clearer: | SCB, New York | **Certificate of Origin:** | 100% U.S. |
| **Description:** | Shipment of U.S. origin aircraft parts from a UAE trader in aircraft parts to an Iranian government subsidiary responsible for manufacture and repair of aircraft. | | **Goods Description:** | Aircraft spare parts as per P/I FP/APS/0954/01 DD 020308 |
| **EAR 99 Item:** | No | | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | | **Other Possible U.S. Connection:** | No |
| **Other Details:** | | | | |



©2011 Promontory Financial Group, LLC. All rights reserved.

81

**CONFIDENTIAL**

## Applicant: Iran Aircraft Industries / Iran
## Beneficiary: FP Aeroparts / UAE

| | |
|---|---|
| **Value:** | $8,994 |
| **Transaction Date:** | 5/18/2003 |

| | | | | |
|---|---|---|---|---|
| **Program:** | Iran | | **Product Type:** | Advising Export Letter of Credit and Payment |
| **Case Reference:** | 3.f.vi | | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $14,000 | | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $8,994 | | **Total Payments:** | $8,994 |
| **U.S. Persons:** | Clearer: | SCB, New York | **Certificate of Origin:** | 100% U.S. |
| **Description:** | Shipment of U.S. origin aircraft parts from a UAE trader in aircraft parts to an Iranian government subsidiary responsible for manufacture and repair of aircraft. | | **Goods Description:** | Aircraft spare parts as per P/I FP/APS/0954/01 DD 020308 |
| **EAR 99 Item:** | No | | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | | **Other Possible U.S. Connection:** | No |
| **Other Details:** | | | | |



©2011 Promontory Financial Group, LLC. All rights reserved.

82

**CONFIDENTIAL**

**Applicant: Iran Power Development Company / Iran**
**1st Beneficiary: Mapna International 2nd Beneficiary: Zener Electronics / UAE**

| | | Value: | $1,596 |
| --- | --- | --- | --- |
| | | Transaction Date: | 2/24/2003 |

| | | | |
| --- | --- | --- | --- |
| Program: | Iran | Product Type: | Advising Export Letter of Credit and Deferred Payment of Transferred Proceeds Under Export Letter of Credit: Markazi refinance |
| Case Reference: | 3.f.vii | Post April 12, 2005: | No |
| Letter of Credit Amount: | $105,632 | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $1,596[1] | Total Payments: | $105,632 |
| U.S. Persons: | Clearer: SCB, New York | Certificate of Origin: | U.S. and UK |
| Description: | Shipment of goods to Iranian government power development company's UAE subsidiary, who obtained the goods from a UAE energy industry equipment trader. | Goods Description: | "Fire Fighting Equipment" |
| EAR 99 Item: | No | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | Trading Company: | No |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | Yes | Other Possible U.S. Connection: | Yes, Bermad |
| Other Details: | Shipping documents indicated one U.S. origin good and that U.S. manufacturer Bermad certified goods to the Iranian Applicant. Such certification is evidence of a possible direct export. The goods description additionally indicates "detection apparatus," which could include CCL-listed items such as those described in ECCN 1A004—nuclear, biological or chemical detection systems. SCB, Dubai is the "Available With" Bank. | | |

[1] Being the value of the U.S. goods contained in the various shipments under this Letter of Credit.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

83

## 4. Transactions That Involved U.S. Persons

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 4. Transactions That Involved U.S. Persons

- This category consists of transactions that involved a U.S. nexus other than U.S. origin goods or payments clearing through a U.S. clearing bank. The "U.S. person" in these transactions was either a U.S. legal entity that played a role in a transaction (for example, a U.S. shipping agency or a U.S. registered vessel), or a U.S. citizen.
- The Review considered U.S. citizens related to the transaction entities, and did not seek to identify the nationalities of SCB employees who may have been involved in the processing of the transaction.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 4. Transactions That Involved U.S. Persons



| Transactions That Involved U.S. Persons | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| a. Monarch Aviation | 316 | $12,110,565 | 15 | $734,793 |
| b. U.S. Shipping Agencies | 2 | $1,070,645 | 2 | $1,070,645 |
| c. U.S. Vessels | 2 | $82,238 | 1 | $59,098 |
| Total | 320 | $13,263,448 | 18 | $1,864,536 |

86

**CONFIDENTIAL**

## 4.a. Transactions That Involved U.S. Persons - Monarch Aviation - Overview

- There were 316 transactions, with a total value of $12,110,565, that involved Monarch Aviation and have been classified as Transactions That Involved U.S. Persons.

- These transactions all involve Monarch Aviation, where the only confirmed U.S. nexus (apart from any U.S. cleared transactions that appeared to follow u-turn routing) is the dual citizenship of Laura Wang-Woodford, one of its owners. The transactions have been classified as involving a U.S. person based on information contained in the 2003 indictment of Laura Wang-Woodford, stating that she is a U.S. citizen. In addition, SCB, Singapore's Account Opening and KYC files reflected that she had a UK passport, a Singapore ID card stating her nationality as British, and a Singapore address, but also contained documents stating her nationality as American.

- All transactions followed a similar pattern (in terms of the Beneficiaries and Applicants involved, and the flow of goods) to those transactions reported in Section 3.a. of the Report, but the majority of them were not refinanced by SCB, Dubai under the "Markazi" credit facility. For the transactions not subject to refinancing, SCB, Singapore claimed reimbursement from the Advising and/or Issuing Bank with the latter effecting payment through SCB, New York onto SCB, London's account with SCB, New York for further credit to SCB, Singapore and then Monarch Aviation.

- For the transactions in this section, the evidence available was insufficient to conclusively prove the goods involved were of U.S. origin (if the evidence had been sufficient, these transactions would have been categorized as Transactions Involving Non-EAR 99 U.S. Origin Goods). However, the transactions were identified as having an indication that the goods were potentially of U.S. origin, from:
  - In some cases, the existence of Certificates of Origin that were self-certified by the Exporter, and not by the Chamber of Commerce;
  - The evidence available, which included SWIFT MT 700s that called for U.S. origin goods; and
  - The context provided by the other transactions relating to Monarch Aviation where there was sufficient documentary evidence, and the further context of the Indictment against Monarch Aviation.

- For more information on Monarch Aviation, please refer to Section 3.a. of this Report.

**CONFIDENTIAL**

## 4.a. Transactions That Involved U.S. Persons - Monarch Aviation - Transaction Summary



| Transactions That Involved U.S. Persons - Monarch Aviation | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| 4.a Monarch Aviation, Singapore | 302 | $11,582,705 | 15 | $734,793 |
| 4.a Monarch Aviation, Dubai | 14 | $527,860 | 0 | $0 |
| 4.a Total | 316 | $12,110,565 | 15 | $734,793 |

©2011 Promontory Financial Group, LLC. All rights reserved.

88

**CONFIDENTIAL**

## 4.b. Transactions That Involved U.S. Persons - U.S. Shipping Agencies - Relationship Overview

*(Section 4.b. includes two transactions with two different Beneficiaries)*

**Overview - Amesco FZE**
- The Dun & Bradstreet listing for Beneficiary Amesco FZE indicates that it is a UAE Importer/Exporter with 6 employees, categorized as a wholesaler of appliances as well as a metals service center.
- Bank KYC information indicates that Amesco is a Private Limited Company, owned by Ali Mesforoosh, who is of Iranian origin, has Canadian citizenship, and is domiciled in the UAE.

**Overview - Best Enterprises General Trading**
- Internet web directories list Beneficiary Best Enterprises General Trading under a former name, Isfahan Iron General Trading, and as being involved in the trade of industrial goods. The name change of the entity is noted in the transactional documents for the case.
- Bank KYC information indicates that Best Enterprises General Trading is an LLC comprised of individuals of both UAE and Iranian nationality, and is a general trader dealing primarily in steel and iron.
- For both transactions involving U.S. Shipping Agencies, SCB, Dubai acted as the Advising Bank on Export Letters of Credit, as well as the "Available With" bank.

**Transaction Overview**
- 14 transactions involving Beneficiary Amesco FZE were reviewed, with a total value of $20,726,945.
- 1 transaction involving Beneficiary Best Enterprises General Trading was reviewed, with a total value of $590,000.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 4.b. Transactions That Involved U.S. Persons – U.S. Shipping Agencies – Transaction Details

**Transactions That Involved U.S. Persons – U.S. Shipping Agencies**

- There were 2 transactions with a total value of $1,070,645.
- Transactions involved shipments to Iran where documents indicate that shipping agencies were U.S. companies.
- 1 transaction involved the shipment of goods from Iraq to Iran via truck to a metals wholesaler in Iran. The Beneficiary of the Letter of Credit was a UAE trader in industrial goods, Best Enterprises General Trading. Shipping documents indicate that the trucking company used, Bestol Trade LLC, has a U.S. address and uses a Latvian bank. Internet research indicates that Bestol Trade is a likely shell company as several different companies can be found using the same address as Bestol Trade.
- 1 transaction involved the shipment of Russian goods to an Iranian metals service center. The Beneficiary of the Letter of Credit was a UAE building material supplier, Amesco FZE. Shipping documents indicate that the freight carrier, Weston Finance, is a U.S. entity. Internet research indicates that Weston Finance is a likely shell company, as several different companies can be found using the same address as Weston.

**Other Transactions Reviewed**

- 13 transactions involving Beneficiary Amesco FZE were also reviewed with a value of $20,246,300. The transactions all involved shipments of steel and steel products to Iranian entities. 9 of the 13 transactions have been categorized as Transactions That Appeared to Follow U-Turn Routing and are reported in Section 6.  The remaining 4 transactions have been categorized as Transactions With No U.S. Nexus and are reported in Section 7.
- No other transactions involving Beneficiary Best Enterprises General Trading were reviewed.

| | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions That Involved U.S. Persons - U.S. Shipping Agencies | 2 | $1,070,645 | 2 | $1,070,645 |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## Applicant: Foulad Bahman Sepahan Co. / Iran
## Beneficiary: Best Enterprises Gen. Trading / UAE

| Value: | $590,000 |
| --- | --- |
| Transaction Date: | 7/18/2005 |

| Program: | Iran | | Product Type: | Export Letter of Credit and Payment under Export Letter of Credit: Transfer of Proceeds |
| --- | --- | --- | --- | --- |
| Case Reference: | 4.b.i | | Post April 12, 2005: | No |
| Letter of Credit Amount: | $590,000 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $0 | | Total Payments: | $590,000 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | Iraq |
| Description: | Shipment of goods from Iraq to Iran via truck to a metals wholesaler in Iran by UAE trader in industrial goods. | | Goods Description: | Iron and Steel Scrap |
| EAR 99 Item: | Yes | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | Yes | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | No | | Other Possible U.S. Connection: | Yes; Bestol Trade LLC |
| Other Details: | Shipping documents indicate that the trucking company used was Bestol Trade LLC, which has a U.S. address and uses a Latvian bank. Research indicates that the entity is likely a shell company. SCB, Dubai is the "Available With" Bank. | | | |

| Fright Amount: | Place and date of issue: Baghdad/ Iraq 10.6.04 |
| --- | --- |

Mr.
Director of

$407 N.E.Fremont str Portland,Oregon 97220 usa,Beneficiary bank Trust Commercial bank Benefiary bank ADD 9Miesnicku str Riga LV 1050,Latvija,SWIFT code KBRU

©2011 Promontory Financial Group, LLC. All rights reserved.

91

CONFIDENTIAL

## Applicant: Aydin Fulad Co. / Iran
## Beneficiary: Amesco FZE / UAE

| Value: | $480,645 |
| --- | --- |
| Transaction Date: | 8/9/2006 |

| Program: | Iran | | Product Type: | Advising Export Letter of Credit and Payment under Export Letter of Credit: Transfer of Proceeds |
| --- | --- | --- | --- | --- |
| Case Reference: | 4.b.ii | | Post April 12, 2005: | Yes |
| Letter of Credit Amount: | $480,900 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $0 | | Total Payments: | $480,645 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | Russia |
| Description: | Shipment of Russian goods to an Iranian entity by a UAE building material supplier. Only research source found for Iranian entity is a Dun & Bradstreet classification as a "metals service center." | | Goods Description: | Hot Rolled Steel Coils |
| EAR 99 Item: | Yes | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | Yes | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | No | | Other Possible U.S. Connection: | Yes, Weston Finance Inc. |
| Other Details: | Shipping documents indicate the freight carrier, Weston Finance, is a U.S. entity. Research indicates that the entity is likely to be a shell company. SCB, Dubai is the "Available With" Bank. | | | |

# Weston Finance
# Inc.

701 Benner Road, Wilmington, Delaware 19810, County of New Castle, USA

DATE: 31.07.2005
TO WHOM IT MAY CONCERN

**FREIGHT INVOICE**

©2011 Promontory Financial Group, LLC. All rights reserved.

92

CONFIDENTIAL

## 4.c. Transactions That Involved U.S. Persons - U.S. Vessels - Relationship Overview

*(Section 4.c. includes two transactions with two different Applicants)*

**Overview - Zafco Trading LLC**
- The Dun & Bradstreet listing for Applicant Zafco Trading LLC indicates that it is a UAE Importer/Exporter with 270 employees, categorized as a wholesaler of tyres and tubes, as well as chemical products and auto parts.
- Bank KYC information indicates that Zafco Trading LLC is a UAE trader of tyres and tubes, whose parent company is World Trade Consortium Ltd incorporated in the UK.
- For the transaction involving Applicant Zafco Trading LLC, Import Bills for Collection were presented to SCB, Dubai, who paid funds to the Beneficiary through SCB, New York, who routed the payment through Bankers Trust Co., New York.

**Overview - Orient Symbol Trading**
- Dun & Bradstreet listing for Applicant Orient Symbol Trading indicates that it is a UAE Importer/Exporter with 3 employees, categorized as a wholesaler of non-durable goods and home furnishings.
- Bank KYC information indicates that Orient Symbol Trading has a parent company incorporated in Iran, and has four owners, three of whom are Iranian nationals, domiciled in the UAE.
- For the transaction involving Applicant Oriental Symbol Trading Co., SCB, Dubai paid funds based on Import Collection documents which were routed through SCB, New York.

**Transaction Overview**
- 24 transactions involving Applicant Orient Symbol Trading Company were reviewed, with a total value of $2,001,107.
- 9 transactions involving Applicant Zafco Trading LLC were reviewed, with a total value of $278,111.

**CONFIDENTIAL**

## 4.c. Transactions That Involved U.S. Persons - U.S. Vessels - Transaction Details

**Transactions That Involved U.S. Persons - U.S. Vessels**

- There were 2 transactions with a total value of $82,238.
- Transactions involved the shipment of goods to Iran where pre-carriage vessels of transshipment sailed under the U.S. flag.
- 1 transaction involved the shipment of Thai origin automotive batteries to Iran from a manufacturer in Thailand. The Applicant of the Letter of Credit was Zafco Trading LLC, an automotive parts trader in the UAE. The pre-carriage vessel on the transshipment of goods is named the APL Cyprine, which vesseltracker.com indicates sailed under the U.S. flag. Evidence in file indicates that the ultimate destination of goods was Afghanistan.
- 1 transaction involved the shipment of Indonesian origin goods to Iran by a Singapore general trading company. The Applicant of the Letter of Credit was Orient Symbol Trading Company, a UAE trading company specializing in clothing and apparel. The pre-carriage vessel on the transshipment of goods was named the Calvin P Titus, which vesseltracker.com indicates sailed under the U.S. flag.

**Other Transactions Reviewed**

- 23 transactions involving Applicant Orient Symbol Trading Company were reviewed, with a total value of $1,942,009. The transactions primarily involved the shipment of yarn from various countries to entities in Iran. 22 of the 23 transactions have been categorized as Transactions That Appeared to Follow U-Turn Routing and are reported in Section 6. The remaining transaction has been categorized as a Transaction With No U.S. Nexus and is reported in Section 7.
- 8 transactions involving Applicant Zafoc Trading LLC were reviewed, with a total value of $254,971. All 8 transactions involved the purchase and shipment of automotive batteries and tires of non-U.S. origin. Of these 8 transactions, 1 transaction, denominated in AED, involved a shipment to Iran and is reported in Section 7; 2 involved shipments to U.S. sanctioned countries other than Iran and will be reported in a subsequent report; and the remaining 5 transactions were found by Promontory to not involve a U.S. sanctioned country.

| Transactions That Involved U.S. Persons - U.S. Vessels | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Vessel - APL Cyprine | 1 | $23,140 | 0 | $0 |
| Vessel - Calvin P. Titus | 1 | $59,098 | 1 | $59,098 |
| **Total U.S. Vessels** | **2** | **$82,238** | **1** | **$59,098** |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

**Applicant: Orient Symbol Trading Co. / UAE**
**Beneficiary: Evergreen Global PTE Ltd. / Singapore**

| | | | Value: | $59,098 |
|---|---|---|---|---|
| | | | Transaction Date: | 4/21/2006 |

| Program: | Iran | | Product Type: | Import Collections Documents and Payment |
|---|---|---|---|---|
| Case Reference: | 4.c.i | | Post April 12, 2005: | Yes |
| Letter of Credit Amount: | $59,098 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $0 | | Total Payments: | $59,098 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | Indonesia |
| Description: | Shipment of Indonesian origin goods to Iran by a Singapore general trading company to a UAE trading company specializing in clothing and apparel. | | Goods Description: | Polyester Filament Yarn |
| EAR 99 Item: | Yes | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | No | | Other Possible U.S. Connection: | Yes; see other details |
| Other Details: | Pre-carriage vessel on the transshipment of goods is named the Calvin P Titus, which research indicates is under the U.S. flag. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

95

**CONFIDENTIAL**

## Applicant: Zafco Trading LLC / UAE
## Beneficiary: Siam Furukawa Co. Ltd. / Thailand

| Value: | $23,140 |
|---|---|
| Transaction Date: | 11/14/2002 |

| | | | | |
|---|---|---|---|---|
| **Program:** | Iran | | **Product Type:** | Import Letter of Credit and Payment under Import Letter of Credit: Trust Receipt |
| **Case Reference:** | 4.c.ii | | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $23,140 | | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $0 | | **Total Payments:** | $23,140 |
| **U.S. Persons:** | Clearer: | Bankers Trust, New York | **Certificate of Origin:** | None in File/Documents indicate Thailand |
| **Description:** | Shipment of Thai origin automotive batteries to Iran from a manufacturer in Thailand to an automotive parts trader in the UAE. | | **Goods Description:** | Automotive Batteries |
| **EAR 99 Item:** | Yes | | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | | **Other Possible U.S. Connection:** | Yes; see other details |
| **Other Details:** | Pre-carriage vessel on the transshipment of goods is named the APL Cyprine, which research indicates is under the U.S. flag. Evidence in file indicates that the ultimate destination of goods was Afghanistan. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

96

**CONFIDENTIAL**

## 5. Transactions Identified as Non U-Turn Payments

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 5.a. Transactions Identified as Non U-Turn Payments to Kesht Va - Relationship Overview

**Overview**
- Our research has not found any information regarding Kesht Va Sanat Khabardasht Co ("Kesht Va").
- No accounts for Kesht Va were identified by the Bank.

**Transaction Overview**
- No other transactions involving Kesht Va were identified, other than the transaction detailed below.

**Transactions Identified as Non U-turn Payments**
- There was 1 transaction which involved Iranian Applicant Kesht Va receiving generator sets and spare parts from Cummins Power Generation Ltd., a UK subsidiary of a U.S. generator manufacturer.
- SCB, London served as the Advising Bank and the "Available With" Bank.
- The Letter of Credit called for goods to be of UK origin, but this cannot be evidenced from the hardcopy available, as no copy shipping documents were located.
- The payment flow of the transaction indicates that Bank of America, London received the USD payment from the U.S. clearing bank for Beneficiary Cummins Power Generation Ltd.
- Bank of America, London is a branch of a U.S. bank and would therefore be considered a U.S. person in this transaction. Accordingly, this transaction has been classified as a non u-turn payment.

| | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Transactions Identified as Non U-Turn Payments to Kesht Va | 1 | $412,094 | 0 | $0 |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 5.a. Non U-Turn Payments to Kesht Va Sanat Khabardasht Company



**Kesht Va Sanat Khabardasht Company of Iran wished to purchase generator sets from Exporter Cummins Power Generation Limited**

1. At the request of Kesht Va Sanat Khabardasht Company, Export Development Bank of Iran (the Issuing Bank) issued a Letter of Credit for $415,000 to Credit Suisse, advised through SCB, London.

2. Cummins Power Generation Limited presented the Letter of Credit documents to SCB, London (the Negotiating Bank), which then forwarded them for acceptance to Export Development Bank of Iran.

3. Upon acceptance by Export Development Bank of Iran, reimbursement was claimed by SCB, London from Credit Suisse, Zurich.

4. Credit Suisse, Zurich effected payment in the amount of $412,094 through Irving Trust, New York to SCB, New York for account of SCB, London.

5. SCB, London further instructed SCB, New York (the Clearing Bank) to pay to Bank of America, London (the Beneficiary Bank) through Bank of America, New York for direct credit to an account of Cummins Power Generation Limited.

**Generator Sets**

– UK Origin

- Clearing payment made by SCB, London via SCB, New York to a UK branch of a U.S. bank

**CONFIDENTIAL**

99

**Applicant: Kesht Va Sanat Khabardasht Co. / Iran**
**Beneficiary: Cummins Power Generation Limited / UK**

| Value: | $412,094 |
|---|---|
| Transaction Date: | 2/5/2004 |

| | | | | |
|---|---|---|---|---|
| **Program:** | Iran | | **Product Type:** | Advising Export Letter of Credit and Payment under Export Letter of Credit |
| **Case Reference:** | 5.a.i | | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $415,000 | | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | $0 | | **Total Payments:** | $412,094 |
| **U.S. Persons:** | Clearer: | SCB, New York | **Certificate of Origin:** | None in File: Letter of Credit indicates UK |
| **Description:** | Shipment of goods to/from a UK-subsidiary of a U.S. generator manufacturer to an unknown entity in Iran. | | **Goods Description:** | Generator Sets and Spare Parts |
| **EAR 99 Item:** | No | | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | | **Trading Company:** | No |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | | **Other Possible U.S. Connection:** | Yes: see other details |
| **Other Details:** | Transaction involves an Iranian Applicant and use of an Iranian bank, Export Development Bank of Iran. Payment flow of transaction indicates that Bank of America, London received USD payment from the U.S. clearing bank for Beneficiary Cummins Power Generation Ltd. Bank of America, London, is a branch of a U.S. bank. Accordingly, the transaction is considered a non u-turn. SCB, London served as the Advising Bank and the "Available With" Bank. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 6. Transactions That Appeared to Follow U-Turn Routing

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 6. Transactions That Appeared to Follow U-Turn Routing

- This category contains transactions which either:
  - Involved a U.S. clearing bank, and the U.S. cleared payment relating to the transaction appeared to follow u-turn routing; or
  - Involved a U.S. clearing bank and another confirmed U.S. nexus and the U.S. cleared payment relating to the transaction appeared to follow u-turn routing, but based on available data there appeared to be a reasonable basis for concluding that the transaction was not otherwise prohibited.
- All U.S. cleared transactions were reviewed for u-turn compliance (being allowable payments made by a U.S. bank involving Iran, that are by order of a third country bank for payment to another third country bank, provided they do not directly credit or debit an Iranian account). In considering the u-turn compliance of a transaction, the following steps were taken:
  - The relevant SWIFT MT202 messages were reviewed, indicating routing of final clearing payments to and from the U.S. banks involved.
  - The hard copy for the transaction was reviewed to confirm it was consistent with u-turn routing of the payment.
  - Where MT202 messages were not present in files, reimbursement claims and account ledgers within hard copy files were reviewed to verify U.S. clearing payment flow and u-turn compliance.
  - Transactions were subsequently verified via review of SWIFT MT940 statements of account which served as final confirmation of payment.
- This category includes 4 Blue Sky Group transactions for a total value of $92,650,000, which were considered in detail during our work, and involved U.S. cleared payments. In certain cases where the underlying transactions involved U.S. origin items, for the reasons discussed in "Other Details" in the transaction tables on pages 104-107, it has been determined that the underlying transactions did not appear to be subject to U.S. regulatory prohibitions under the EAR and ITR. More information is provided in this section on these transactions, for the purposes of disclosure and transparency. Further details on the circumstances surrounding these transactions identified from document and email reviews will be covered in a separate report on SCB's historical relationship with the Blue Sky Group.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 6. Transactions that Appeared to Follow U-Turn Routing



| | Volume | Value | Post-April 12, 2005 Volume | Post-April 12, 2005 Value |
|---|---|---|---|---|
| Transactions that Appeared to Follow U-Turn Routing | 605 | $902,451,254 | 308 | $574,632,231 |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

**Applicant: Mahan Air / Iran**
**Beneficiary: Blue Sky Aviation / UAE**

| Value: | $29,150,000 |
|---|---|
| Transaction Date: | 2/9/2006 |

| Program: | Iran | | Product Type: | Export Collection |
|---|---|---|---|---|
| Case Reference: | 6.i | | Post April 12, 2005: | Yes |
| Collection Amount: | $29,750,000 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $600,000 | | Total Payments: | $29,150,000[1] |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | Not evidenced |
| Description: | Export Collection for $29,750,000 for the shipment of an Airbus A320-232 MSN 857 Registration No EP-MHJ plus two engines IAE V2527-A5 MSN V10382 and V10383 and one APU Hamilton Sundstrand APS 3200 MSN 1060 | | Goods Description: | Shipment of an Airbus A320-232 MSN 857 Registration No EP-MHJ plus two engines IAE V2527-A5 MSN V10382 and V10383 and one Auxiliary Power Unit Hamilton Sundstrand APS 3200 MSN 1060. |
| EAR 99 Item: | No – Aviation Goods | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | Yes | | Other Possible U.S. Connection: | No |
| Other Details: | [1] Payment made for Auxiliary Power Unit was estimated at $600,000. This value is reported in Section 3.e. of this Report. Engines confirmed to be non-U.S. origin and aircraft believed to contain less than 10% non-exempt U.S. origin content. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

**Applicant: Blue Sky Aviation**
**Beneficiary: Mahan Air**

| Value: | $21,000,000 |
| --- | --- |
| Transaction Date: | 11/29/2003 |

| | | | |
| --- | --- | --- | --- |
| **Program:** | Iran | **Product Type:** | Advanced Payment Guarantee |
| **Case Reference:** | 6.ii | **Post April 12, 2005:** | No |
| **Guarantee Amount:** | $21,000,000 | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | See Other Details, below. | **Total Payments:** | $21,000,000 |
| **U.S. Persons:** | Clearer: SCB, New York | **Certificate of Origin:** | No |
| **Description:** | Advanced Payment Guarantee for $21m issued by SCB, Dubai, on behalf of Blue Sky, on November 29, 2003 via Bank Mellat, Iran in favour of Mahan covering advance lease rentals payable by Mahan under a 7 year wet lease for 7 second-hand Airbus A320-214 aircraft from Europe. Identification of the aircraft not evident from the files. | **Goods Description:** | Advance lease rentals payable by Mahan Air under a 7 year wet lease for 7 second-hand Airbus A320-214 aircraft from Europe. Identification of the aircraft not evident from the files. |
| **EAR99 Item:** | N/A - See Other Details, below. | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | **Trading Company:** | Yes |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | Yes | **Other Possible U.S. Connection:** | No |
| **Other Details:** | The underlying transaction involves lease payments on aircraft that appear to already be in Iran. In consultation with SCB's external counsel, this underlying transaction has been treated as not involving the export/re-export of goods. | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

105

**CONFIDENTIAL**

## Applicant: Mahan Air
## Beneficiary: Sogerma Maintenance Group France

| Value: | $10,000,000 |
|---|---|
| Transaction Date: | 02/03/2000[1] |

| Program: | Iran | | Product Type: | Export Letter of Credit |
|---|---|---|---|---|
| **Case Reference:** | 6.iii | | **Post April 12, 2005:** | No |
| **Letter of Credit Amount:** | $10,000,000 | | **Payment Status:** | Confirmed |
| **Payments for U.S. Goods:** | See Other Details, below. | | **Total Payments:** | $10,000,000 |
| **U.S. Persons:** | Clearer: | SCB, New York | **Certificate of Origin:** | No |
| **Description:** | Maintenance services, component repair and spare parts for 2 Mahan Air Fleet Airbus A300-B4s (MSN035 & 055), both of which carry GE CF6-50C2 series engines. | | **Goods Description:** | Details of the parts used in the contract were not specified. |
| **EAR99 Item:** | No - See Other Details, below. | | **Consistent with Line of Business:** | Yes |
| **Shell Company Involvement:** | No | | **Trading Company:** | No |
| **Agent, Affiliate, or Subsidiary of Iranian Entity:** | No | | **Other Possible U.S. Connection:** | No |
| **Other Details:** | [1] Although payment under the Letter of Credit negotiation was effected on February 3, 2000, the funding risk was sold down ($6m to Iran Overseas Investment Bank, London and $4m to the Issuing Bank, Export Development Bank of Iran) with repayments at maturity of the loans being processed on January 20, 2001. The Airbus A300-B4s were originally manufactured in the 1970s, and the transaction history shows that they have been continually outside the United States since then. Our research also indicated that the engines (ESN 455751 and ESN 455793) were manufactured in 1977 and 1978, respectively. It is therefore assumed that most (if not all) U.S. origin content in the aircraft (including the engines) would have been exempt from the re-export prohibition under ITR § 560.205 as the goods were likely exported from the United States and do not appear, based on the evidence available, to have been the property of a U.S. Person, on and since the cut-off date of May 7, 1995 and were not likely to have been subject to re-export license application requirements prior to May 6, 1995. It is assumed that any U.S. origin maintenance parts supplied after that date would likely be less than 10% of the value of the aircraft. As there is no other U.S. nexus, the transaction has been placed in the Transactions That Appeared to Follow U-turn Routing category. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

106

**CONFIDENTIAL**

**Applicant: Mahan Air General Trading LLC Dubai**
**Beneficiary: Sirjanco Trading LLC**

| Value: | $32,500,000 |
|---|---|
| Transaction Date: | 03/7/2005 |

| Program: | Iran | | Product Type: | Import Loan |
|---|---|---|---|---|
| Case Reference: | 6.iv | | Post April 12, 2005: | Yes (for repayment) |
| Loan Amount: | $32,500,000 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $0 | | Total Payments: | 1 payment of $31,323,000 (advance) and 1 payment of $32,500,000 (repayment) |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | None in file |
| Description: | Loan agreed by SCB, Dubai for the purchase of ground handling equipment/'non aircraft of non U.S. origin'. | | Goods Description: | Ground handling equipment/non aircraft of non U.S. origin. |
| EAR 99 Item: | N/A | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | Affiliate | | Other Possible U.S. Connection: | No |
| Other Details: | The loan was secured by a guarantee dated March 7, 2005 for $32.5m in favour of SCB, Dubai from Bank Melli, Sharjah issued at request of Mahan Air General Trading, valid until September 1, 2005. The loan was drawn down on March 7, 2005 with the proceeds of $31,323,000 (after fees and interest) being paid to Sirjanco Trading LLC, Dubai (at the request of Mahan Air General Trading) by MT103 from SCB, Dubai to Bank Saderat, Dubai for a/c Sirjanco Trading LLC, with Saderat's account in SCB, Dubai's books being credited in cover (i.e. there was no U.S. cleared payment). The loan was then repaid on September 7, 2005 with SCB, Dubai receiving $32,500,000 from Bank Melli, Sharjah (honouring their Guarantee), through Credit Suisse, Zurich and cleared via Irving Trust (Bank of New York) and SCB, New York. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

107

**CONFIDENTIAL**

# 7. Transactions With No U.S. Nexus



©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 7. Transactions With No U.S. Nexus

**Transactions With No U.S. Nexus**

- This category contains transactions for which no U.S. nexus was confirmed during our Review. There are a wide range of scenarios where this was the case, with examples including where the transaction was non-USD and there was no other U.S. nexus, and where the transaction was cancelled or unutilized.
- In total, we reviewed 674 transactions with a value of c. $1,324m, where the records available were sufficiently detailed to enable the investigator to form a judgment regarding the case, and no U.S. nexus was identified.

| | Volume | Value |
|---|---|---|
| Transactions With No U.S. Nexus | 674 | $1,323,818,313 |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

# 8. Potentially Licensable or Exempt Transactions

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

# 8. Potentially Licensable or Exempt Transactions - Transaction Summary

**Potentially Licensable Or Exempt Transactions**

- This category consists of transactions that, based on a review of available data, were found to fall within certain sub-categories based on OFAC exemptions, licenses, and statements of policy set out in the ITR applicable at the time the relevant transaction took place. These sub-categories are:
  - Agricultural; and
  - Medical.
- These transactions are detailed in this section.

| Potentially Licensable or Exempt Transactions | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| b. Agricultural – Tate & Lyle | 1 | $8,052,237 | 0 | $0 |
| c. Medical – Aris Trading | 1 | $47,500 | 0 | $0 |
| Total | 2 | $8,099,737 | 0 | $0 |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 8.a. Potentially Licensable or Exempt Transactions - Agricultural - Tate & Lyle - Relationship Overview

**Overview**

- According to our research, the activities of Tate & Lyle PLC, UK Public Limited Company, and its subsidiary and associated undertakings are principally processing carbohydrates to provide a range of sweetener and starch products, and animal feed and bulk storage.
- We have not sought to establish the extent of SCB's relationship with Tate & Lyle.

**Transaction Overview**

- 266 transactions involving Tate & Lyle were identified in the Tier 1 trade data as being active from January 1, 2001 – December 31, 2007 with a total value of c.$280m.
- Of the 266 transactions, 1 transaction was selected for hard copy review within our sample. As detailed in Section 1, for Tier 1, all electronic trade data and all USD SWIFT messages in the Review Period were filtered using Promontory's filtering methodology.

**Potentially Licensable Or Exempt Transactions - Agricultural**

- On December 30, 2004, Bank Markazi asked SCB, London to advise its Letter of Credit for $8,159,550 to Tate & Lyle, London on behalf of the Government Trading Corp of Iran. The goods were raw cane sugar to be shipped from Brazil to Iran, with payment At Sight.
- The shipment was effected and documents were presented to SCB, London by Tate & Lyle.
- It appears that the Letter of Credit issued by Bank Markazi was the subject of a silent confirmation by SCB, London.
- Following shipment, Bank Markazi's account at SCB, London was debited on February 28, 2005 with $8,052,237 in respect of the negotiation under the Letter of Credit. The funds were remitted to Tate & Lyle by MT103 serial payment by SCB, London for $8,043,937, again with a value date of February 28, 2005, via SCB, New York to pay ABN AMRO, U.S., for direct credit to an account of Tate & Lyle International in its books.
- The payment relating to this transaction does not follow u-turn routing, because the funds from Bank Markazi's account at SCB, London were paid to the beneficiary's account at a bank in the United States.
- This transaction has been identified as potentially licensable as involving agricultural goods.

| | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Potentially Licensable or Exempt Transactions to Agricultural - Tate & Lyle | 1 | $8,052,237 | 0 | $0 |

©2011 Promontory Financial Group, LLC. All rights reserved.

112

**CONFIDENTIAL**

## 8.a. Potentially Licensable or Exempt Transactions - Agricultural - Tate & Lyle

**Importer Government Trading Corporation of Iran wished to purchase raw sugar cane from Exporter Tate & Lyle UK**

1. At the request of Government Trading Corporation of Iran, Bank Markazi Jomhouri Islami (the Issuing Bank), issued a Letter of Credit for $8,159,550 through SCB, London to Tate & Lyle.
2. Tate & Lyle presented the Letter of Credit documents to SCB, London (the Negotiating Bank), which then forwarded them for acceptance to Bank Markazi.
3. Upon receipt of acceptance from Bank Markazi, SCB, London directly debited the bank account that Bank Markazi maintained with SCB, London.
4. SCB, London further instructed SCB, New York (the Clearing Bank) to pay to ABN Amro, New York (the Beneficiary Bank) for direct credit to an account of Tate & Lyle International.

**Raw Cane Sugar**

– Brazilian Origin

- Transaction involves potentially licensable goods
- Clearing payment by SCB, New York made to ABN AMRO in the United States.

CONFIDENTIAL

## Applicant: Government Trading Corporation of Iran/Iran
## Beneficiary: Tate & Lyle International/UK

| Value: | $8,052,237 |
|---|---|
| Transaction Date: | 2/28/2005 |

| Program: | Iran | | Product Type: | Export Letter of Credit with Silent Confirmation |
|---|---|---|---|---|
| Case Reference: | 8.a.i | | Post April 12, 2005: | No |
| Letter of Credit Amount: | $8,159,550 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $0 | | Total Payments: | $8,052,237 |
| U.S. Persons: | Clearer: | SCB, New York | Certificate of Origin: | None in File/Bill of Lading States Brazil |
| Description: | Shipment of cane sugar from Brazil to an Iranian government commodities trader via a UK-based supplier and manufacturer of food ingredients. | | Goods Description: | Raw Cane Sugar of Current Crop in Bulk |
| EAR 99 Item: | Yes | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | No | | Other Possible U.S. Connection: | No |
| Other Details: | Transaction does not follow u-turn routing because funds were paid by SCB, London on behalf of Bank Markazi through SCB, New York to ABN AMRO, U.S., for direct credit to an account of the Beneficiary, Tate & Lyle International. Goods potentially licensable as agricultural. | | | |

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL

## 8.b. Potentially Licensable Transaction - Medical - Aris Trading - Relationship Overview

**Overview**

- Internet research indicates that Aris Trading does not have a dedicated website, and limited information was found on the entity through web directories and third-party resources.
- A Dun & Bradstreet listing for Aris Trading does not include any employees or director information for the company. No negative news found.
- Research performed on the Iranian Applicant for the goods, Khaneh Sazi Iran Holding Co., reveals a non-English website. Dun & Bradstreet classifies the entity as a holding company with Majid Ghasemi listed as the Chairman and CEO. No negative news found. As a holding company, Khaneh Sazi Iran Holding is likely to not be the ultimate recipient of the goods.
- KYC information was requested for Aris Trading, but information was unavailable for this entity.

**Transaction Overview**

- 35 transactions involving Aris Trading were identified in the Tier 1 trade data as being active from January 1, 2001 – December 31, 2007 with a total value of c. $4.35m.
- 1 of the 35 identified transactions for Aris Trading was reviewed in our sample.

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## 8.b. Potentially Licensable Transaction - Medical - Aris Trading - Transaction Details

**Potentially Licensable Transaction - Medical**

- 1 transaction with a value of $47,500.
- SCB, Dubai acted as the Advising Bank on an Export Letter of Credit, as well as the "Available With" bank for the transaction. There is no indication that the transaction cleared through SCB, New York.
- The good involved was an Oximeter, Model NPB 295, manufactured by Nellcor Puritan Bennett Company. The Certificate of Origin for the shipment indicates that the Oximeter was of U.S. and Irish origin.
- Research indicates that an Oximeter is a medical device used to measure the oxygen content in blood. There is no evidence in the data reviewed indicating that the export of the Oximeter to Iran was made pursuant to an OFAC license at the time of the transaction.
- The Oximeter is not described on the Commerce Control List (CCL) in the Export Administration Regulations ("EAR"). Therefore, such items are most likely EAR 99 items and are eligible for export from the United States to most of the world without an export license.
- This transaction has been classified as potentially licensable as a medical device, given the nature of the goods. If this category was not applicable to this device, it would have been classified in this Report as a Transaction Involving EAR 99 U.S. Origin Goods – Inconclusive Direct Export.
- There is little evidence present for the probability of direct export, as no link between the U.S. manufacturer and the Applicant or Beneficiary can be found in the hard copy files.

**Other Transactions Reviewed For This Entity**

- None.

| | Volume | USD Amount | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| Potentially Licensable Transactions to Medical - Aris Trading | 1 | $47,500 | 0 | $0 |

©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

## Applicant: Khaneh Sazi Iran Holding Co. / Iran
## Beneficiary: Aris Trading Co. LLC / UAE

| Value: | $47,500 |
|---|---|
| Transaction Date: | 4/8/2003 |

| Program: | Iran | | Product Type: | Advising Export Letter of Credit and Payment Under Export Letter of Credit |
|---|---|---|---|---|
| Case Reference: | 8.b.i | | Post April 12, 2005: | No |
| Letter of Credit Amount: | $47,500 | | Payment Status: | Confirmed |
| Payments for U.S. Goods: | $47,500 | | Total Payments: | $47,500 |
| U.S. Persons: | Clearer: | None | Certificate of Origin: | U.S. and Ireland |
| Description: | Shipment of an Oximeter of U.S. and Irish origin to an Iranian holding company via a UAE trading company. Limited information available on both parties. | | Goods Description: | "Oximeter Model NPB 295, Manufactured by Nellcor Puritan Bennett Company" |
| EAR 99 Item: | Yes | | Consistent with Line of Business: | Yes |
| Shell Company Involvement: | No | | Trading Company: | Yes |
| Agent, Affiliate, or Subsidiary of Iranian Entity: | No | | Other Possible U.S. Connection: | Yes, Nellcor Puritan Bennett Company (U.S. manufacturer) |
| Other Details: | One product - identified on the invoice as of U.S. and Irish origin - was likely manufactured with components from each country. Proportion of U.S. components cannot be determined from shipping documents. Goods potentially licensable as medical equipment. Manufacturer is a U.S. based company. SCB, Dubai is the "Available With" Bank. | | | |



©2011 Promontory Financial Group, LLC. All rights reserved.

**CONFIDENTIAL**

117

## 9. Transactions Involving EAR 99 U.S. Origin Goods – Inconclusive Direct Export

©2011 Promontory Financial Group, LLC. All rights reserved.

118

**CONFIDENTIAL**

## 9. Transactions Involving EAR 99 U.S. Origin Goods – Inconclusive Direct Export

**Transactions Involving EAR 99 U.S. Origin Goods**

- The approach to the classification of transactions involving U.S. origin goods is detailed on page 18.
- This category includes transactions that involved U.S. origin goods not likely to be listed on the CCL but still subject to the EAR (i.e., not specifically exempted under EAR § 734.3). EAR 99 items are eligible for export from the United States to most of the world without an export license. Generally such items can be exported to Iran from third countries by non-U.S. persons without violating the EAR as long as Iran was not the intended destination when the items were exported from the United States.
- For these transactions, consideration also was given to the probability that the underlying trade could be interpreted as a "direct" trade between the United States and Iran. The factors considered included the nature of the U.S. nexus in the transaction (e.g. if any U.S. parties were involved in the export of the goods), and the business of the Exporter (e.g. if the entity was involved in the import and export of goods to a range of counterparties and destinations, and if the entity appeared to only service one or more Iranian entities on a subsidiary, shell or agency basis). These features are noted in the commentary for each transaction set.

| Transactions Involving EAR 99 U.S. Origin Goods - Inconclusive Direct Export | Volume | Value | Post April 12, 2005 Volume | Post April 12, 2005 Value |
|---|---|---|---|---|
| a. Diamonds Steel | 12 | $26,773,000 | 12 | $26,773,000 |
| b. Mapna | 5 | $821,381 | 0 | $0 |
| c. Bakelite General Trading | 12 | $1,635,637 | 9 | $1,263,579 |
| d. Other Goods | 19 | $2,321,073 | 6 | $545,370 |
| Total | 48 | $31,551,091 | 27 | $28,581,949 |

©2011 Promontory Financial Group, LLC. All rights reserved

**CONFIDENTIAL**

## 9.a. Transactions Involving EAR 99 U.S. Origin Goods - Diamonds Steel - Relationship Overview [1]

**Overview**

- Diamonds Steel FZE ("Diamonds Steel") is a UAE incorporated company.
- Dun & Bradstreet listing indicates that Diamonds Steel currently has 12 employees, with Mr. Nasrollah Isadpanah listed as CEO.
- Diamonds Steel appears to be a subsidiary of Iranian steel manufacturer Alborz Steel:
  - The Diamonds Steel website accessible during our investigation gave a link to Alborz Steel's website as a "related link".
  - A business listing website (www.tradekey.com) states that Diamonds Steel is a subsidiary of Alborz Steel in its description of the entity.
- Based on the transactional review, Diamonds Steel did business with entities other than Alborz Steel and its associated companies (Alborz Steel, Hafta Almas Industries, and Khorram Sanat), with the other transactions focused on the export of finished steel products (e.g. kitchen sinks).
- SCB has informed Promontory that during the Review Period, SCB, Dubai maintained accounts for Diamonds Steel. Details regarding these accounts will be covered in a separate report on SCB's historical relationship with Diamonds Steel.

**Transaction Overview**

- 173 transactions involving Diamonds Steel were identified in the SCB, Dubai trade data as being active from January 1, 2001 – December 31, 2007 with a value of c. $137m.
- 55 transactions were reviewed with a total value of $43,196,214:
  - These transactions account for all Diamonds Steel business after April 12, 2005, and include 10 cases reviewed during the initial stages of our work and a further 45 transactions later reviewed on a judgmental basis.
  - The decision to review more Diamonds Steel transactions was made when U.S. origin goods were identified in some of the initial transactions reviewed. It was decided to focus the further review work on the transactions that occurred after April 12, 2005, which we understand is the date to which the statute of limitations runs for the purposes of consideration by OFAC, per agreement between OFAC and SCB.

[1] This overview does not constitute a full report on SCB's historical business with Diamonds Steel. Facts gathered in the course of SCB's review of its business with Diamonds Steel during the Review Period will be the subject of a separate report.

©2011 Promontory Financial Group, LLC. All rights reserved.

CONFIDENTIAL