

190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

44 South Broadway, White Plains, NY 10601
T: 212 354 0111
www.osenlaw.com

February 12, 2026

**VIA ECF**

Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  ***Freeman, et al. v. HSBC Holdings plc, et al.*, 18-cv-7359 (PKC) (PCG)**
> **Notice of New Authority – *Atchley v. AstraZeneca* (D.C. Cir. Jan. 23, 2026)**

Dear Judge Chen:

Plaintiffs write to bring to the Court's attention the D.C. Circuit's recent opinion in *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077 (D.C. Cir. Jan. 23, 2026), attached here as Exhibit A.

*Atchley*'s explication of the Supreme Court's analysis of aiding and abetting under JASTA in *Twitter v. Taamneh*, 598 U.S. 471 (2023), is instructive because it is consistent with binding precedent in this Circuit—it also confirms that Defendants' arguments in support of their motion to dismiss are unavailing.

Defendants argued that the operative complaint fails because it lacks "any factual allegations plausibly connecting any banking services by the Moving Defendants and any of the Attacks that harmed Plaintiffs." Defs. Mem. in Support of MTD at 3. That is, Defendants contend that Plaintiffs must trace Defendants' knowing and illegal assistance to the IRGC and to the IRGC's proxy Hezbollah to each attack.

But *Atchley* explained that the Supreme Court rejected this argument:

> [T]he Supreme Court in *Taamneh* declined to adopt the defendants' proposed "direct traceability" test. Even as it held that the allegations before it fell short, it clarified that "aiding and abetting does not require the defendant to have known all particulars of the primary actor's plan" because, for example, a defendant may be liable for "other torts that were a foreseeable risk of [an] intended tort."

Exhibit A at 21.

This is consistent with the Second Circuit's decision in *Ashley v. Deutsche Bank AG*: "[A] defendant need not be aware of its role in the specific terrorist attack that caused the plaintiff's injury," but instead "must be generally aware of its role in some illegal activity from which the terrorist attack was foreseeable." 144 F.4th 420, 438 (2d Cir. 2025). *See also id.* at 437 ("JASTA permits recovery against those who aid and abet international terrorism 'directly or indirectly.'" (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 856 (2d Cir. 2021)).

In their opposition brief, Plaintiffs argued:

In fact, [*Taamneh*] specifically suggests that knowingly providing financial services to an FTO (as opposed to media platform access) may be sufficient if the assistance is substantial. The Supreme Court distinguished Twitter's and Facebook's "passive nonfeasance" from Google's alleged sharing of revenue with ISIS, earned from advertisements viewed alongside ISIS videos. The Court's concern with these distinct allegations was *not* that they were "passive" or did not qualify as "conscious, capable" conduct, but that "they were devoid of any allegations about *how much* assistance Google provided and therefore did not plausibly allege that Google's assistance was substantial"—it was possible that Google "shared only $50 with someone affiliated with ISIS…." Here, of course, the Defendants provided the IRGC and Hezbollah with *billions*.

Opp. at 51 (quoting *Taamneh*, 598 U.S. at 492, 505).

The *Atchley* court came to the same conclusion in reading *Taamneh*:

[T]he Supreme Court suggests that *funding-based claims may require less of a nexus*. After dismissing most of the *Taamneh* plaintiffs' claims for lack of sufficient nexus, the Court dealt separately with plaintiffs' allegation that Google supported ISIS financially through revenue sharing. The Court found no merit in that claim, but only after determining that the complaint failed to provide sufficient detail about the substantiality of the financial assistance, such as the amount and frequency of the revenue sharing.

Exhibit A at 22 (emphasis added).

Indeed, *Atchley* further confirms Plaintiffs' view, emphasizing that "[r]equiring an overly rigid nexus is especially inappropriate when a plaintiff alleges that a defendant provided financial assistance." *Id.* at 21. It is enough that the plaintiffs' allegations are "circumscribed temporally and geographically" to a "defined subset" of attacks which "were the predictable, virtually inevitable fallout" of defendants' payments to entities controlled by terrorists. *Id.* at 22, 23.[1]

Plaintiffs' allegations here, like those in *Atchley*, involve a high degree of culpability and substantiality of the defendants' assistance. Defendants here knowingly assisted IRGC and Hezbollah entities. Defendants illegally moved *hundreds of billions* of dollars for their designated customers—indeed, they provided such extensive assistance their *fines alone* were in the billions. *See, e.g.*, *id.* ¶¶ 17-19, 27, 41, 239, 392 (generally); 889, 894, 901,1127, 1134, 1142, 1157, 1167, 1179-84, 1375-77, 1389-90, 1405-06, 1410-16, 1420 (SCB); 1514, 1581-84 (HSBC); 1603 (Commerzbank); 1686, 1756 (Credit Suisse); 1817 (RBS); 1875 (Barclays). These illegal money

---

[1] This level of assistance is the definition of "pervasive and systemic." That said, Plaintiffs have shown a nexus between Defendants' customers and the attacks. *See, e.g.*, TAC ¶¶ 320-376 (quoting numerous articles connecting Defendants' customers and IRGC-controlled fronts NIOC, Khatam al-Anbiya, and others to, *inter alia*, "'Iran's multibillion-dollar campaign to acquire American-made weapons and military supplies.'"). For example, SCB serviced customers comprising direct components of the IRGC's terror network, including IRISL, MODAFL, and Mahan Air, *id.* ¶¶ 1192-1227, including at least 50 *post-designation* transactions on behalf of IRISL, *id.* ¶ 1187. RBS/ABN-Amro conducted 90 post-designation transactions for IRISL. *Id.* ¶ 1766.

laundering services were *designed to enable **terror financing***—for example, HSBC's deferred prosecution agreement specifically noted that the bank's settlement with the United States was part of "[t]he fight against … terror financing." ¶ 1583 (HSBC). Likewise, the Manhattan District Attorney announced that New York's agreement with SCB would "contribute to the fight against … terror financing." *Id.* ¶ 1380.

*Atchley* also explained that the terrorist attacks at issue "were a natural and virtually inevitable consequence of defendants' *unusual, corrupt, and plentiful assistance*." Exhibit A at 4 (emphasis added). Likewise, in *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-cv-00007 (CBA) (TAM), 2024 U.S. Dist. LEXIS 241810, at *55-56 (E.D.N.Y. Sep. 18, 2024), the court found sufficient allegations that "Defendants made efforts to help Hezbollah hide funds from American sanctions," such as "[t]he bespoke servicing of a bank account, including the facilitation of payment transfers [and] evasion of counter-terrorism sanctions."

Defendants here provided "unusual, corrupt, and plentiful assistance" to the IRGC and Hezbollah and worked closely with their customers to deceive U.S. regulators, law enforcement and intelligence agencies attempting to stop terror financing. *See, e.g.*, TAC, ¶¶ 1144-56, 1160-62, 1241, 1257, 1280, 1283, 1295-1303, 1404, 1426-27, 1436 (SCB); 1480, 1491-92, 1517, 1529-37, 1551-52 (HSBC), 1607, 1610, 1612, 1629-31 (Commerzbank); 1696, 1698, 1707-09, 1710-13, 1725-26, 1731-38, 1744-45, 1748 (Credit Suisse); 1773, 1781-84, 1789, 1791, 1794-95, 1798, 1802 (RBS); 1840-43, 1855-62, 1867, 1869 (Barclays). Defendants even created bespoke ***employee manuals*** to guide employees in assisting IRGC terror financing. *See, e.g.*, *id.*, ¶¶ 1153-55, 1173 (SCB); 1530-33, 1547-49 (HSBC); 1610 (Commerzbank); 1710-11, 1736 (Credit Suisse); 1777-80 (RBS); 1843-45 (Barclays).

In sum, this Court should deny Defendants' motion to dismiss because the undisputed conduct here clearly meets the pleading requirements articulated by both the Second and D.C. Circuits and the Supreme Court in *Taamneh*.

Respectfully submitted,

/s/ Michael J. Radine

cc:     All Counsel

Encl.