UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KATHALEEN FREEMAN, *et al.*,

        Plaintiffs,

-against-

HSBC HOLDINGS PLC, *et al.*,

        Defendants.

Case No. 18-cv-7359-PKC-CLP

**DEFENDANT COMMERZBANK AG'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION
OF THE COURT'S MARCH 31, 2026 MEMORANDUM AND ORDER**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement.................................................................................................... 1

Background ...................................................................................................................... 2

     A.    The Aiding-and-Abetting Claims ................................................................ 2

     B.    Procedural History ...................................................................................... 3

Argument ........................................................................................................................ 5

     I.    The Order Overlooked *Twitter*'s Near-Common Enterprise Requirement For Stating a Claim Based on Pervasive and Systemic Assistance ....................... 5

     II.    The Order Overlooked *Twitter*'s Culpable Participation Requirement For Stating a Claim Based on a Concrete Nexus ........................................................... 9

Conclusion .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Ashley v. Deutsche Bank Aktiengesellschaft*,
144 F.4th 420 (2d Cir. 2025) ..............................................................................*passim*

*Bartlett v. Société Générale de Banque Au Liban SAL*,
2024 WL 5497906 (E.D.N.Y. Sep. 18, 2024).................................................... 6, 7

*Daniels v. Gladstone*,
2019 WL 3502924 (E.D.N.Y. July 31, 2019)........................................................ 5

*Henkin v. Kuveyt Turk Katilim Bankasi A.S.*,
2025 WL 622546 (E.D.N.Y. Feb. 26, 2025)......................................................... 8

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021)................................................................................. 8

*Raanan v. Binance Holdings Ltd.*,
2025 WL 605594 (S.D.N.Y. Feb. 25, 2025).......................................................... 8

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995).................................................................................... 5

*Troell v. Binance Holdings Ltd.*,
2026 WL 636849 (S.D.N.Y. Mar. 6, 2026) .......................................................... 5

*Twitter v. Taamneh*,
598 U.S. 471 (2023)....................................................................................*passim*

*Zobay v. MTN Grp. Ltd.*,
695 F. Supp. 3d 301 (E.D.N.Y. 2023) .................................................................. 8

## PRELIMINARY STATEMENT

Commerzbank AG respectfully requests that the Court reconsider the portion of its March 31, 2026 Memorandum & Order (ECF No. 161, the "Order") holding that Claim Ten states a JASTA aiding-and-abetting claim against Commerzbank based on banking services Commerzbank allegedly provided to the German charity known as "Orphans Project."[1] As the Order recognized in analyzing Plaintiffs' other aiding-and-abetting allegations, to state a claim under *Twitter v. Taamneh*, Plaintiffs must plausibly allege that the defendant "culpably associated [itself] with the [attacks that injured Plaintiffs], participated in [the attacks] as something that [it] wished to bring about, or sought by [its] action to make [the attacks] succeed." Order at 30 (quoting *Twitter v. Taamneh*, 598 U.S. 471, 498 (2023)) (internal quotations omitted). "[K]nowledge of one's role in terrorist activities by itself is insufficient to allege an aiding-and-abetting claim." *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 440 (2d Cir. 2025); *see also* ECF No. 81 at 14 ("*Freeman II* 2020 Order") ("Evidence that [a bank] knowingly provided banking services to [an FTO], without more, is insufficient to satisfy JASTA's scienter requirement." (quoting *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 495 (2d Cir. 2021)). This "culpable misconduct" requirement is derived from "criminal law," which requires the defendant "to take some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter*, 598 U.S. at 490 (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)).

The Order properly applied this standard in dismissing Claim Nine because Plaintiffs "failed to sufficiently allege that Defendants had the requisite 'intent to further [an FTO's] terrorist activities.'" Order at 38 (quoting *Ashley*, 144 F.4th at 444). But the Order overlooked

---

[1] Capitalized terms not defined here have the meaning provided in Defendants' Joint Memorandum in Support of Their Motion to Dismiss, ECF No. 144.

this standard in sustaining Claim Ten against Commerzbank without determining that Plaintiffs sufficiently alleged that Commerzbank had the requisite intent to further Hezbollah's terrorist activities.

*Twitter* confirms that this culpability requirement applies even where the Court identifies a concrete nexus to the attacks, and demands even more to establish pervasive and systemic assistance, as the Order appears to have concluded exists here. *See Twitter*, 598 U.S. at 503 (aiding-and-abetting claims have "essential culpability moorings"); Order at 43. But the TAC added no new allegations regarding Commerzbank's conduct—the only new allegations concerned public sources allegedly connecting Orphans Project to the Martyrs Foundation or Hezbollah, which go only to the "general awareness" element. The new allegations do not cure the deficiencies this Court previously identified in dismissing the claim with prejudice. *See Freeman II* 2020 Order at 13-14; *see also* ECF No. 145 at 7-9 ("Commerzbank Mem.").

Claim Ten fails for the same reasons the claims in *Twitter* failed and for the same reasons the Court dismissed Claim Nine and previously dismissed Claim Ten against Commerzbank: Plaintiffs have not alleged that Commerzbank formed a "near-common enterprise" with Hezbollah, "consciously and culpably" participated in any terrorist attack, or sought to make Hezbollah's attacks succeed. *Twitter*, 598 U.S. at 497, 502. The Court should reconsider the Order and dismiss Claim Ten.

## BACKGROUND

### A.  The Aiding-and-Abetting Claims

The TAC asserts two aiding-and-abetting claims against Commerzbank: Claim Nine against all Defendants, and Claim Ten against Commerzbank only.

Claim Nine alleges that Defendants knowingly violated U.S. sanctions by providing Iranian entities allegedly connected to the IRGC "unusual, illegal, and substantial banking and

payment services" and "facilitating massive trade-based money laundering" for "notorious customers publicly linked to terrorism." Order at 2-3. Based on these alleged banking services, Plaintiffs allege that "Defendants aided and abetted the IRGC and its Lebanese proxy, Hezbollah, in the commission of their acts of terrorism." *Id.* at 20.

Claim Ten is based solely on Commerzbank's alleged maintenance of a bank account for a German charity customer, Orphans Project. *See* TAC ¶ 1674. Plaintiffs allege (without any support) that Orphans Project "transferred several million dollars to Hezbollah's Martyrs Foundation in Lebanon through Commerzbank." *Id.* ¶ 1650. In turn, the Martyrs Foundation allegedly "provide[d] financial and other material support to Hezbollah terrorists wounded in action, and to the families of Hezbollah terrorists killed in action." *Id.* ¶ 1660. Although the Martyrs Foundation was designated by the United States as an SDGT—*not* as an FTO like Hezbollah—on July 24, 2007, Orphans Project was never sanctioned by the United States and operated lawfully in Germany while it held a Commerzbank account. *Id.* ¶¶ 1649, 1669. The TAC does not allege that Commerzbank provided any special services or assistance to Orphans Project. *See id.* ¶¶ 1674-75. Unlike Claim Nine, Plaintiffs do not allege that Commerzbank violated any sanctions or other legal restrictions in connection with Orphans Project. *See* Commerzbank Mem. at 2; ECF No. 150 at 2-3 ("Commerzbank Reply").

**B.      Procedural History**

On June 5, 2020, this Court granted Defendants' motion to dismiss the FAC. *Freeman II* 2020 Order. The FAC, like the TAC, asserted aiding-and-abetting liability against Commerzbank based on Commerzbank's maintenance of a bank account for Orphans Project, which allegedly donated funds to the Martyrs Foundation. *See* FAC ¶¶ 1193-94. The Court dismissed this claim, holding that the FAC failed to allege a "direct connection between the services that Commerzbank provided . . . and any alleged terrorist activities." *Freeman II* 2020 Order at 13.

Plaintiffs filed the TAC on March 28, 2025. The TAC advances no new allegations about Commerzbank's conduct with respect to Orphans Project. *Compare* TAC ¶¶ 1674-75, *with* FAC ¶¶ 1193-94; *see also* Commerzbank Mem. at 5-6. The only new allegations are additional public sources allegedly connecting Orphans Project to Martyrs Foundation and/or Hezbollah. Specifically, the TAC alleges that: (1) in January 2008, a German newspaper reported that Orphans Project "belonged to" the Lebanese "Al-Shahid (The Martyr) Association," which "in turn" is affiliated with Hezbollah (TAC ¶ 1673); (2) in 2003, a German report referenced Orphans Project in a discussion of financing of infrastructure projects and other social services provided by Hezbollah (*id.* ¶ 1676); and (3) "as of 2002," Orphans Project's website mentioned its work with the Martyrs Foundation (*id.* ¶ 1654).

On March 31, 2026, this Court granted in part and denied in part Defendants' motion to dismiss the TAC. Order at 1-2. As to Claim Nine, the Order held that Plaintiffs had sufficiently alleged general awareness, *id.* at 29, but failed to allege knowing and substantial assistance, *id.* at 37-38. Relying on *Twitter*, the Order held that given the attenuated nexus between Defendants' services and the attacks that injured Plaintiffs, and given Plaintiffs' failure to allege any facts demonstrating "the requisite intent to aid the specific terrorist acts at issue," Claim Nine failed to allege the requisite culpable participation in the attacks at issue. *Id.* at 35-36.

In denying Commerzbank's motion to dismiss Claim Ten, the Order held that the public sources cited in the TAC sufficed to plead Commerzbank's "general awareness of its role in the illegal or tortious activity." *Id.* at 42. The Order then analyzed the "knowing and substantial assistance" element, ruling that "the nexus between Commerzbank's assistance and the terrorist attacks at issue is . . . significantly stronger than in the Ninth Claim" and that the allegations about Commerzbank's conduct "mirror those in *Bartlett*," in which Judge Amon held that certain

Lebanese banks had "provided Hezbollah with pervasive, substantial assistance." *Id.* at 43

(citing TAC ¶ 1660 and *Bartlett v. Société Générale de Banque Au Liban SAL*, 2024 WL

5497906, at \*5 (E.D.N.Y. Sep. 18, 2024)).

**ARGUMENT**

"A motion for reconsideration pursuant to Local Civil Rule 6.3 is the proper vehicle for

bringing to the Court's attention matters it may have overlooked in its initial ruling or [O]rder."

*Daniels v. Gladstone*, 2019 WL 3502924, at \*6 (E.D.N.Y. July 31, 2019) (Chen, J.) (citation

omitted). Where "the moving party can point to controlling decisions or data that the court

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court," a court may grant the motion. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255,

257 (2d Cir. 1995).

## I. THE ORDER OVERLOOKED *TWITTER*'S NEAR-COMMON ENTERPRISE REQUIREMENT FOR STATING A CLAIM BASED ON PERVASIVE AND SYSTEMIC ASSISTANCE

In denying Commerzbank's motion to dismiss Claim Ten, the Order did not assess the

degree of substantial assistance that Commerzbank allegedly provided to each of the 200 terrorist

attacks allegedly carried out between 2004 and 2011 in Iraq by Hezbollah. Nor could it. As the

Court recognized in previously dismissing Claim Ten, Plaintiffs do not allege "any factual

allegations showing a connection between the bank's services and the terrorist activity at issue."

*Freeman II* 2020 Order at 13-14. The TAC alleges (without any support) that Orphans Project

"transferred several million dollars to Hezbollah's Martyrs Foundation in Lebanon through

Commerzbank," TAC ¶ 1650, but does not allege to what extent any transactions took place prior

to, or after, the attacks or any connection between any transactions and the specific attacks that

injured Plaintiffs. *See* Order at 41 n.50; Commerzbank Mem. at 8; *Troell v. Binance Holdings

Ltd.*, 2026 WL 636849, at \*18 (S.D.N.Y. Mar. 6, 2026) (complaint failed to establish nexus

-5-

where it lacked crucial details, including "to what extent substantial transactions took place prior to, or after, the terrorist attacks at issue").

As this Court recognized elsewhere in its Order, where "a plaintiff's theory would hold a defendant liable for all the torts of an enterprise, then a showing of pervasive and systemic aid is required to ensure that defendants actually aided and abetted each tort of that enterprise." Order at 32 (citing *Twitter*, 598 U.S. at 506). The Order overlooked the "high bar" that the Second Circuit has confirmed is required to establish such a sweeping theory of liability under *Twitter*. *Ashley*, 144 F.4th at 445. Plaintiffs must show that Commerzbank "affirmatively gave aid that would assist each of [Hezbollah]'s terrorist acts" or "formed a near-common enterprise" with Hezbollah. *Twitter*, 598 U.S. at 502-03. "At this point, aiding-and-abetting liability begins to blur with conspiracy liability, which typically holds co-conspirators liable for all reasonably foreseeable acts taken to further the conspiracy." *Id.* at 496; *see also* Commerzbank Mem. at 8.

The Order concluded that the knowing and substantial assistance element was satisfied for Claim Ten because "the facts alleged by Plaintiffs most closely mirror those in *Bartlett*, in which Judge Amon found this element sufficiently pled based on plaintiffs' allegation that the defendant bank had 'provided Hezbollah with pervasive, substantial assistance constituting hundreds of millions of dollars of funding and crucial access to Lebanese and international financial networks through Hezbollah's proxies.'" Order at 43. In *Bartlett,* the defendants were alleged to have: (1) "opened and serviced accounts for individuals and organizations known to be linked to Hezbollah"; (2) "employed managers who 'served as key facilitators and coordinators for Hezbollah' within their banking departments"; and (3) "made efforts to help Hezbollah hide funds from American sanctions." *Bartlett*, 2024 WL 5497906, at *5; *accord* Order at 33, 35; *see also* ECF No. 148 at 12 ("Joint Reply"). These allegations established that the *Bartlett* defendants had

formed a "near-common enterprise" with Hezbollah—exactly the type of conspiracy-like relationship that *Twitter* requires for liability based on pervasive and systemic assistance. *Twitter*, 598 U.S. at 496, 502.

None of these hallmarks is present here. Commerzbank is a German bank that allegedly maintained an account for a German charity that allegedly donated to a Lebanese charity that in turn allegedly supported Hezbollah, *see* TAC ¶¶ 1674-75, in contrast with the Lebanese bank in *Bartlett* that employed managers serving as Hezbollah "facilitators and coordinators," *Bartlett*, 2024 WL 5497906, at *5. Commerzbank is not alleged to have evaded U.S. sanctions in connection with services for Orphans Project—unlike the *Bartlett* defendants. Commerzbank Mem. at 2. And Commerzbank is not alleged to have formed any special relationship with Orphans Project—unlike the *Bartlett* defendants, who "had Hezbollah liaisons within their institutions who facilitated the transactions for those terrorist affiliates." *Bartlett*, 2024 WL 5497906, at *4. The Court's analogy to *Bartlett* thus overlooks the very features that made the *Bartlett* defendants' conduct culpable. *Cf. id*. at *5 ("The bespoke servicing of a bank account, including the facilitation of payment transfers, evasion of counter-terrorism sanctions, and the appointing of a liaison within the banks to facilitate the relationship with those accounts linked to terrorism, points to a relationship that is less attenuated than what plaintiffs alleged in *Taamneh*.").

Nor is Commerzbank's alleged conduct in any way comparable to the allegations deemed sufficient to sustain claims on a "pervasive and systemic assistance" theory in *Zobay*, *Henkin*, *Raanan*, or *Kaplan*—the very cases the Order cited and distinguished in dismissing Claim Nine. Order at 35-36; *see also* Joint Reply at 12-13. In *Zobay*, "'the second floor of [defendant's] Iran offices was allegedly populated by military intelligence officials,' and defendant 'allegedly

invested in a venture with two shareholder entities with significant connections to the IRGC.'" Order at 35 (quoting *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 346-47 (E.D.N.Y. 2023)).  In *Henkin*, the defendant bank allegedly had a "'close relationship' with known Hamas affiliates" and "effectuat[ed] transfers 'at the direction of a Hamas minister.'"  *Id.* (quoting *Henkin v. Kuveyt Turk Katilim Bankasi A.S.*, 2025 WL 622546, at *4 (E.D.N.Y. Feb. 26, 2025)).  In *Raanan*, the defendants allegedly "knew in real-time that terrorists were transacting on the platform" and "went out of [their] way to *protect* a user associated with Hamas."  *Id.* at 35-36 (quoting *Raanan v. Binance Holdings Ltd.*, 2025 WL 605594, at *21 (S.D.N.Y. Feb. 25, 2025)).  And in *Kaplan*, when the U.N. issued a report finding that the defendant bank was providing banking services to "a Hizbollah-linked money laundering gang," the bank responded by stating that "we consider such allegation as part of the propaganda and war launched by the Jewish state against Lebanon" and authorizing an *increase* in credit limits for its money-laundering customer.  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 849 (2d Cir. 2021); *see also* Commerzbank Reply at 2-3.  Less than a year later, the defendant, "in knowing violation of banking regulations," began providing special exemptions to its Hezbollah-affiliated customers by "allow[ing] them to deposit large sums in various accounts at different [] branches—totaling more than $2.5 million dollars a week—without disclosing their source."  *Id.* at 862, 866; *see also* Order at 36 (contrasting the "special exceptions" alleged in *Kaplan* with the sanctions violations alleged as part of Claim Nine).

Here, there are no "insider allegations" connecting Commerzbank to Hezbollah.  Order at 35.  There are no allegations that Commerzbank provided "special exceptions" to Orphans Project.  *Id.* at 36; *see also* Commerzbank Reply at 2-3, 5.  And there are no allegations that Commerzbank took affirmative steps to protect or facilitate Hezbollah's operations.  *See*

Commerzbank Mem. at 8-9. The Order accordingly erred in finding this demanding standard satisfied based on the same allegations the Court found deficient in the FAC. *See Twitter*, 598 U.S. at 502 (allegations fall short of establishing pervasive and systemic assistance where the "[p]laintiffs do not claim that defendants intentionally associated themselves with [the FTO's] operations or affirmatively gave aid that would assist each of [the FTO's] terrorist acts," and have not alleged that "defendants and [the FTO] formed a near-common enterprise of the kind that could establish such broad liability").

## II. THE ORDER OVERLOOKED *TWITTER*'S CULPABLE PARTICIPATION REQUIREMENT FOR STATING A CLAIM BASED ON A CONCRETE NEXUS

The Order overlooked that plausible allegations of culpability are still required to state a claim based on a concrete nexus. Order at 43. Under *Twitter*, the *knowing* element of "knowing and substantial assistance" requires more than a showing that Commerzbank was generally aware of its role in Hezbollah's overall scheme; instead, it is "designed to capture [Commerzbank's] state of mind with respect to [its] actions and the tortious conduct." *Twitter*, 598 U.S. at 504. *Ashley* makes clear that, to indicate Commerzbank's willingness to aid the terrorist activities, Plaintiffs must allege that Commerzbank's "continued services" to Orphans Project demonstrate "interested cooperation, stimulation, instigation"—not mere "knowledge, acquiescence, carelessness, indifference, lack of concern." *Ashley*, 144 F.4th at 443 (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 713 (1943)).

The Order, applying a standard the Court characterized as "permissive," held that the TAC's new public source allegations sufficed to plead general awareness—*i.e.*, that Commerzbank was aware of its customer's alleged ties to Hezbollah. *See* Order at 42-43. But the Order did not separately consider, as required by *Twitter*, whether Commerzbank engaged in

-9-

"any culpable conduct . . . directed toward [Hezbollah]" or "culpably associated [itself] with [Hezbollah's] actions." *Twitter*, 598 U.S. at 504.

There is no allegation in the TAC sufficient to show that Commerzbank "culpably 'associated [itself] with' the [attacks], 'participated in [them] as something that [it] wished to bring about,' or sought 'by [its] action to make [the attacks] succeed.'" *Id.* at 498 (citation omitted); *see also* Commerzbank Mem. at 7-8; ECF No. 154 at 2 ("*Ashley* Letter"). The TAC alleges only that Commerzbank maintained an account for Orphans Project and "transferred millions of dollars on its behalf" despite public sources "identifying its customer as a Hezbollah fundraising organization." TAC ¶¶ 1674-75. Thus, Commerzbank's only alleged conduct was maintaining a bank account for Orphans Project. *Id.* ¶ 1674. Orphans Project allegedly donated to the Martyrs Foundation in Lebanon, which in turn allegedly provided financial support to Hezbollah terrorists or their families. *Id.* ¶¶ 1660, 1675. But these allegations "focus 'primarily on the value' of [Commerzbank's] services to [Orphans Project] and assume that those services ultimately inured to the benefit of [Hezbollah]," without answering the fundamental question of "'whether [Commerzbank] culpably associated' itself with [Hezbollah's] wrongful actions." *Ashley*, 144 F.4th at 440 (quoting *Twitter*, 598 U.S. at 504); *see also Ashley* Letter at 2-3. As the Order recognized in analyzing Claim Nine, and as underscored by *Twitter*, "culpability of some sort is necessary to justify punishment of a secondary actor, lest mostly passive actors like banks become liable for all of their customers' crimes by virtue of carrying out routine transactions." *Twitter*, 598 U.S. at 491; *see also* Order at 32 (quoting *Twitter*, 598 U.S. at 491).

*Ashley* further demonstrates the lack of requisite culpability. There, the plaintiffs alleged that the defendant banks "knew that [their customers] were internationally notorious as a suspected financier and fundraiser for al-Qaeda and the Taliban." Am. Compl. at 289, *Wildman*

*v. Deutsche Bank Aktiengesellschaft*, No. 21-CV-04400, 2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022), ECF No. 38.  The plaintiffs also alleged that Standard Chartered Bank ("SCB") provided commercial banking services to Pakistani fertilizer companies whose products were smuggled into Afghanistan and used to manufacture IEDs that killed and injured American service members.  *Ashley*, 144 F.4th at 428-29.  An American general allegedly personally informed SCB that the companies' fertilizer caused "approximately 80% of all American bomb casualties in Afghanistan" and urged the bank to stop providing services to the companies, claiming it would "save American lives."  *Id.* at 429-30.  SCB allegedly refused and continued providing the same financial services.  *Id.* at 430.  The Second Circuit held that these allegations failed to plead knowing and substantial assistance because "SCB's continued services demonstrate 'knowledge, acquiescence, carelessness, indifference, lack of concern'—not 'interested cooperation, stimulation, instigation.'"  *Id.* at 443 (quoting *Direct Sales*, 319 U.S. at 713); *see also Ashley* Letter at 3.

The same is true here.  Indeed, the Second Circuit emphasized that the *Ashley* plaintiffs "would have a much stronger claim if they plausibly alleged that [the bank] was treating [the companies] differently than it treated its other clients"—giving them "special treatment" that would "more readily allow an inference that the failure to act was nonetheless culpable."  *Ashley*, 144 F.4th at 443; *see also Ashley* Letter at 4.  Here, Plaintiffs do not allege that Commerzbank treated Orphans Project differently from any other customer.  Commerzbank Reply at 3.

To be sure, *Ashley* and *Twitter* recognize that nexus and culpability operate on a sliding scale such that "if the assistance were direct and extraordinary, then a court might more readily infer conscious participation in the underlying tort."  *Twitter*, 598 U.S. at 492.  Plaintiffs' allegations come nowhere close to showing assistance that is "direct and extraordinary."  *See*

Commerzbank Mem. at 7-9; Commerzbank Reply at 2-3. As this Court previously ruled, all that Plaintiffs allege is that Commerzbank "provided routine banking services" to Orphans Project. ECF No. 90 at 12-13 n.15. And Defendant Bank Saderat (a designated SDGT)—not Commerzbank—"is the only bank that Plaintiffs allege transferred money directly to Hezbollah." *Id.* at 12. Even where assistance is direct and extraordinary (which is not the case here), a showing of scienter is still required to tie the aiding-and-abetting claim to "its essential culpability moorings," and that is plainly missing here. *Twitter*, 598 U.S. at 503.

## CONCLUSION

For the foregoing reasons, Commerzbank respectfully requests that the Court grant its motion for partial reconsideration and dismiss Claim Ten for failure to state a claim.

Dated: April 14, 2026
New York, New York

Respectfully submitted,

*/s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Abena Mainoo
Katherine R. Lynch
Miranda Herzog
cboccuzzi@cgsh.com
amainoo@cgsh.com
kalynch@cgsh.com
mherzog@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Defendant Commerzbank AG*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the word-count limitations contained in Rule 6.3 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York because, excluding the parts of the document exempted by those rules, it contains 3,489 words, as calculated by Microsoft Word.

Dated: April 14, 2026
New York, New York

Respectfully submitted,

*/s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.